JOHN C. ARMSTRONG, Appellee, v. MUTUAL LIFE INSURANCE: COMPANY, OF NEW YORK, Appellant.

**Insurance:** FRAUD OF AGENT:   RECOVERY OF PREMIUM:   EVIDENCE.
1   In an action to recover the premium paid on an insurance· policy, which is based on the fraud of the agent in procuring the application, evidence that the agent took up the policies. after they had been delivered is admissible as bearing on the· question of a seasonable return by the plaintiff of the same· after discovery of the fraud.

**Instruction:**  VAGUE AND  UNSUPPORTED BY EVIDENCE:   ISSUES
2   IGNORED.  ` In an action to recover a premium paid for insurance based on the fraud of the agent in procuring the insurance, an instruction calling attention to the fact that the agent regained possession of the policies, delivered them to· the general agent of defendant, who had the assured reexamined before again delivering the same, and stating that: before defendant would be liable for premiums paid he must. show that during the time defendant had possession of the· policies after the first delivery it did some act indicating a, rescission of the contract, and that if it then treated the policy as not in force plaintiff could so treat it and recover the pre-

mium, is erroneous, (1) if intended as an instruction that defendant's requirement of a reexamination indicated an intention to cancel the policy it was too vaguely stated; (2) there being no evidence of defendant's intention to rescind, it was without support; and (3) it ignored the issue of fraud.

Instruction: UNSUPPORTED BY ISSUE OR EVIDENCE. In an action to recover premiums on a policy of insurance on the ground of fraud in procuring the application, an instruction that the policies were not in force unless delivered within a reasonable time, is held not warranted, either by the issues or the evidence.

Delivery of Policy. Depositing a policy of insurance in the post-office properly addressed to applicant, with postage paid, constitutes delivery.

Instruction: UNWARRANTED BY ISSUE. In an action to recover a premium on a policy of insurance, where the claim is that it was not delivered and the proof shows delivery, an instruction that if the same were not delivered in a reasonable time and that if plaintiff did not accept any policy tendered after a reasonable time he can recover, is erroneous as unwarranted by the issues.

*Appeal from Benton District Court.*—HON. G. W. BURN-HAM, Judge.

SATURDAY, OCTOBER 17, 1903.

It appears that in August, 1895, one W. D. Rambo was employed and acting as an agent for the defendant company to solicit applications for life insurance, and that his authority was limited to such purpose. During the month named he secured an application from the plaintiff, which, in form, called for the issuance of a life insurance policy for $5,000 on the so-called "income life plan," with ten year distribution. At the time of making such application plaintiff executed and delivered to said Rambo a note for the sum of $80.25 in payment of the first premium to be due on the policy thus applied for, and the said Rambo gave a written receipt in which payment of said sum for insurance in the defendant company was acknowledged. At about the same time the said Rambo secured from the

wife of plaintiff an application for insurance on her life, which application in form called for the issuance of a policy for $2,500 on the so called "income life plan" with twenty year distribution.   At the time thereof this plaintiff executed and delivered to said Rambo his note for the sum of $127.50 in payment of the first premium to be due on the policy thus applied for by his wife, and the said Rambo gave to him a written receipt for said sum in form similar to that given him in connection with his own application.   At about the same time said Rambo secured from W. J. Armstrong, brother of plaintiff, an application, which in form called for the issuance of a policy on his life for the sum of $5,000 on the same plan as that mentioned in the application made by plaintiff.   Said W. J. Armstrong executed and delivered to said Rambo his note for $115 in payment of the first premium to be due on the policy thus applied for, and the said Rambo gave to him a receipt for said sum in form similar to those given to plaintiff as above stated.   The three applications were forwarded by Rambo to Fleming Bros., general agents of the defendant company at Des Moines, and the same were by them forwarded to the home office of the company in New York.  The applications were accepted, and in due time policies, such as were called for, were issued, and returned to Fleming Bros., who sent them to Rambo for delivery, and the latter made delivery thereof to plaintiff and his wife.   Upon receiving the policies, plaintiff and his wife read them over, and then put them away for safekeeping. About ten days thereafter Rambo called upon plaintiff, and requested that the policies be given to him, saying that a mistake had been made in them, and that Fleming Bros. had sent him to get them that such mistake might be corrected.    The policies were thereupon delivered to him in compliance with such request.   It appears that Rambo had gotten into difficulty with Fleming Bros., his immediate employers, growing out of his misappropriation

of money, and in the shadow of such impending trouble he had gone to plaintiff upon his own motion, and procured the policies to be thus delivered to him.   His sole purpose in so doing was to use them in some way, if possible, in adjusting the trouble with his employers.   After the lapse of some time he delivered the policies to one of the Fleming brothers, and this without any qualification or explanation, as far as shown by the record.   Fleming, in ignorance of the circumstances under which Rambo had secured possession of the policies, and without knowing that the premiums thereon had been paid sent out a physician who made a medical examination of plaintiff and his wife and secured from them a signed certificate of health.   No explanation was made by the physician and the examination was submitted to and the certificate given without question or objection.   Immediately thereafter the policies were returned to plaintiff.   As affecting plaintiff or his wife no other act was done or requirement made by defendant or its agents.   In this connection it may be added that no officer or agent of the defendant had any knowledge prior to the time of the commencement of this action of any claim on the part of plaintiff or his wife to the effect that a fraud had been committed by Rambo in connection with the filling up of their respective applications.   Upon receiving the policies for the second time and finding the same to be the policies originally issued and unchanged plaintiff sent them back to Fleming Bros. without explanation.   As to none of the foregoing facts, as we have stated them, is there any substantial dispute in the record.

This action is brought by plaintiff on his own behalf and as assignee of his wife and brother to recover the amount of the several notes given to Rambo as above stated.   In the first count of the petition it is contended by plaintiff that the policy in fact applied for by him was a ten year endowment, and that the policy applied for by his wife

was a twenty year endowment; that Rambo fraudulently wrote the applications and procured them to be signed as they now appear. They say that they were unable to read the handwriting of Rambo, and that the fraud consisted in his reading the applications to them as though calling for endowment policies, when in fact policies differing in character and value were called for. It is alleged that such fraud was not discovered at the time the policies were delivered to them. The facts in reference to the subsequent taking up of the policies by Rambo are then alleged, and in connection therewith it is said that such policies were retained for a period of about five months; that during that period the policies were under control of defendant, and not in force; that in January, 1896, defendant attempted to place said policies in force by sending a physician to examine them and procure a certificate of health; that the policies were then returned to them, but without the changes having been made therein to make the same conform to the agreement had between them and said Rambo, and that defendant has refused and neglected to make such correction. In the second count of the petition the facts in relation to the application of W. J. Armstrong are set forth, and it is alleged that no policy was ever delivered to him. Judgment in the gross sum of $405.62 is demanded, with interest. The answer is a general denial. The further facts, as far as material, will be noticed in the opinion. Trial was had to a jury, and there was a verdict and judgment in favor of plaintiff for the sum of $284.57. The defendant appeals.—*Reversed.*

*Jamison & Smyth* for appellant.

*Heins & Heins* and *C. W. Meek* for appellee.

BISHOP, C. J.—The evidence offered by plaintiff having relation to the subsequent taking up by Rambo of the

policies issued to plaintiff and his wife was admitted over

1. FRAUD of agent: recovery of premium: evidence.

the objection of defendant that the same was incompetent and immaterial. Counsel for appellant contend that such ruling was error. The action, it is to be observed, is grounded upon the fraud alleged to have been committed by Rambo in connection with the filling out of the applications. As the issues stand, the right of recovery must be predicated upon proof of the fraud alleged, and upon the fact that within a reasonable time after the discovery of such fraud the policies were returned, or offered to be returned, to the defendant. Clearly, a party making application for life insurance is not bound to accept a policy differing in form and provisions from that which he had the right to believe and did believe he was to get. And if by fraud in character such as that the law will take notice of and grant relief against he is induced to accept into his possession such different policy, he is not bound to retain the same and pay premiums thereon. But he must return. or offer to return the policy within a reasonable time, and whether he has done so or not is generally a question of fact for the jury. In this connection, at least, the evidence objected to was material. Rambo was, or had been, the agent of the company. He had procured the policies to be delivered to him upon the representation that a mistake had been made in writing the same, and that he was acting in the premises on the request of Fleming Bros., general agents. Taking the record as it stood at the time, the court might fairly infer that the plaintiff was seeking to prove an actual return of the policies to defendant, and that the evidence offered was but a step in that direction. From the viewpoint of the offer and the ruling, we cannot say that the evidence was inadmissible.

II. Appellant makes complaint of the giving of the tenth instruction. Therein the attention of the jury is

called to the facts connected with the retaking of posses-
sion by Rambo of the policies, and his subse-
quent delivery thereof to Fleming Bros., and
that before such policies were again deliv-
ered to plaintiff the defendant caused plaintiff and his
wife to be re-examined by a physician.    The instruction
then proceeds: "You are instructed that the defendant,
under the undisputed evidence in this case, had no right
to make such requirements of plaintiff and his wife.    Yet,
you are further instructed that if you find from the evi-
dence that the plaintiff and his wife voluntarily and with-
out objection, with a full knowledge of all the facts as to
what the written application theretofore signed by them
contained, consented and agreed to the further examina-
tion, and signed the certificate in evidence, before you of
date January 7, 1896, then these facts, taken alone, would
not make the defendant liable herein; but, before the de-
fendant would be liable to plaintiff for the premiums paid
upon these two policies, upon the facts stated in this in-
struction, he must go further, and show by the evidence
that the defendant, at some time during the time the said
policies were not in possession of plaintiff after the first
delivery to him and before they were redelivered to plain-
tiff, after January 7, 1896, if you find they were so deliv-
ered, did some act indicating that it did not consider said
policies to be in force, and if you find that during said
time the defendant did treat said policies as not being in
force, then plaintiff would have the right to treat said
policies as not being in force, and would have the right to
recover back the premium paid therefor, provided he ex-
ercised such right within a reasonable time."

The thought of the instruction does not readily pre-
ent itself.    Indeed, we are not even now sure that we
have arrived at a correct interpretation.    The contract of
insurance is not included in the record, but we may con-
cede that the trial court, with such contract before it,

2. INSTRUCTION:
vague; un-
supported
by evidence:
issues ignored

correctly determined that defendant had no right to require a medical re-examination of the plaintiff and his wife. So, too, it may be said that the court was right in saying that the fact that plaintiff and his wife may have voluntarily and without objection submitted to such examination, having at the time full knowledge of all the facts stated in the original applications signed by them, would not, taken alone, give plaintiff the right to recover back the premiums paid by him. We are unable, however, to find trace of any line of connection between the propositions thus stated and what is thereafter said in the instruction. Conceding that at some time while the policies were in its possession the defendant did some act indicating that it did not consider the same in force, or, indeed, that it actually treated the policies as not being in force, still we are unable to see how any right of plaintiff involved therein could be affected by the fact that a medical re-examination had been brought about by defendant, which was acquiesced in by plaintiff. Nor do we perceive how such conduct on the part of defendant with respect to the policies, taken in combination with the conclusive propositions previously stated in the instruction, could give rise to a right on the part of plaintiff to treat the policies as not in force, and to maintain an action to recover back the total premiums paid. As we think, the most that could be said under any circumstances would be that the requirement of a further examination was indicative of a purpose on the part of defendant to bring about a cancellation of the policies. If this were the thought of the trial court, and conceding the proposition to be involved in the case, it was too vaguely expressed to be readily understood by the jury.

Directing attention now to the proposition last stated in the instruction, it is to be said, in the first place, that there is no competent evidence in the record tending to

show a purpose on the part of the defendant to treat the policies as not in force. As we have said, the only act done was to call for a further medical examination. In connection therewith, Fleming now testifies that the reason for his action was that he mistakenly supposed at the time that the premiums on the policies had not been paid. It is not claimed, however, that such personal and—as far as shown by the record—undisclosed reason had the effect to change in any way the legal status of the parties. It may be that the thought intended to be expressed in the instruction was that if defendant, having regained possession of the policies, and having given out some expression or done some act indicative of its purpose to permanently withhold such policies, this would amount to a declaration of rescission or cancellation on its part, in which the plaintiff might acquiesce, and at once bring his action to recover back the premiums paid. As we have seen, the primary trouble with this view of the case is that the record is barren of evidence upon which to rest the proposition. But were this not so, we think it must be said, in any event, that the position taken has no merit considered as a matter of law. We have no question but that the parties to an insurance contract may by appropriate words, or by conduct clearly indicating such intention, agree upon a rescission or cancellation of their contract, and this without reference to whether such contract remains in an executory stage, or, on the other hand, had been previously put in full force as to both the parties thereto. That the policies here in question had been put in force cannot be doubted. Delivery had been made thereof, and the premiums paid. There was nothing further to do save to pay the future premiums to become due by the one party and to pay the value of the policies at maturity by the other party. It will be understood, of course, that in this immediate connection we are leaving out of consideration the fraud issue presented by the pleadings.

Now, as a matter of course, mutuality is an essential element in a voluntary contract rescission; such a rescission as would restore the parties to their original status. The parties, by express words, or by conduct clearly indicative of such intention and purpose, must agree upon the fact and the conditions of the rescission. *Johnson v. Reed*, 9 Mass. 78 (4 Am. Dec. 36); *Burton v. Shotwell*, 76 Ky. 271; *Vawter v. Griffin*, 40 Ind. 593. Manifestly, the record before us presents no fact or conditions to which the doctrine of contract rescission can be made applicable. Here possession of the policies was obtained from plaintiff by false pretense, and without right or authority. In the course of time the tortious holder gave over possession thereof into the hands of the general agent of the defendant company, who, having first satisfied himself that plaintiff and his wife continued in good health, thereupon again delivered the policies to plaintiff. Most certainly a voluntary agreement to rescind could not be predicated upon such a state of facts. But, suppose that the defendant company had manifested an intention to treat the policies in question as not in force, or, going to extreme lengths, had in an unequivocal way declared such policies to be without further force and void. What, then, could be said of the rights of plaintiffs? Clearly, a choice between two remedies, and two only, would be open to him. He might sue for a return of his policy, or, on the other hand, he might treat the policy as canceled by the act of the defendant, and sue for the amount of the unearned premiums paid by him. A bare reading will suffice to show that to neither of such cases could the instruction here given be made applicable.

A further and fundamental error of the instruction arises out of the fact that thereby the issues in the case are wholly ignored. Reduced to a sentence, the instruction tells the jury that upon finding the facts in reference to the medical examination to be as stated, and finding as a

further fact that defendant, while the policies were in its possession, did some act manifesting an intention to treat the same as not in force, these will be sufficient upon which to found a verdict in favor of plaintiff. Such, at least, is the effect of the language used, and the jury could hardly fail to so understand. Now, the case made by the pleadings is one based upon fraud. The gist of the action is the alleged tortious conduct of Rambo in securing the applications in the form in which they now appear. Plaintiff is not here contending that he is entitled to recover because the policy contracts have been rescinded by mutual consent, or canceled by the arbitrary action of the defendant. True, the subsequent taking possession of the policies by Rambo, and the delivery of the same by him to the general agents of defendant, is pleaded, but the burden of plaintiff's complaint in that connection is that the defendant sought to make return of the policies without having made any attempt to correct the same, or change them to conform to the original agreement, which they allege was made by them with Rambo. Moreover, the action being thus grounded on fraud, it was necessary to plead a return or offer to return the policies upon discovery of the fraud, and this, we think, must have been the intent of the pleader in setting forth in the petition the facts in relation to the subsequent conduct of the agents of the defendant. The averment in the petition to the effect that the insurance was not in force while the policies were in the possession of Rambo and of Fleming Bros. is the statement of a conclusion merely, and does not, in any sense, control the issue tendered. Such averment may be disregarded for the further reason that the conclusion sought to be drawn has no support in the evidence produced upon the trial. That instructions to a jury must be confined to and in line with the issues made by the parties is a well-settled rule of practice. Our previous cases furnish many illustrations of the application thereof, and they are too familiar to require citation.

III.   Complaint is also made of the giving of instruc-
tions numbered eleven and twelve.  We need not lengthen
this opinion by setting out such instructions.   In each

3. INSTRUCTION: thereof some language is used which involves
unsupported
by issues or   error.    With  one  exception,  however,  we
evidence.
think the ground is fully covered by what we
have said in the preceding division of this opinion.   In
the twelfth instruction, after making reference to the
fraud issue, it is then said that the policies would not be
in force unless the jury "find that, after being issued, they
were delivered to plaintiff within a reasonable time; for,
while delivery was not essential to make a binding con-
tract for insurance, yet the plaintiff and his wife had a
right to the possession of the policies within a reasonable
time after they had been issued, and would not be bound
to accept the insurance unless the said policies were deliv-
ered to them within a reasonable time after they had been
issued."   We are not disposed to question the soundness
of the abstract proposition of law thus stated.   But we
think the instruction involves error as applied to the case
made in the first count of the petition, to which, by ex-
press terms, it was intended to apply.   In no sense is
plaintiff's case grounded upon a failure to make deilvery
of the policies within a reasonable time, and no such issue
is tendered.   But, even were this not so, the instruction
in its present form should not have been given.   It is not
clear whether the delivery to which reference is made is
the first or the second.   It may have been intended that
the instruction should apply to both of such deliveries.
Now, the first delivery was made within a few days after
the applications were taken.   There is not a suggestion in
the evidence that such delivery was not prompt and
timely.   As to the second delivery, it is sufficient to say
that without dispute the plaintiff surrendered the policies
into the hands of an unauthorized person.   From the
hands of such person the policies reached the hands of the

general agents of the defendant, by whom they were shortly afterwards returned to plaintiff. There is nothing to indicate any unreasonable delay on the part of such general agents, and, if there were, it may be doubted if plaintiff could be heard to complain until he had made some request or demand for a return. It follows that there were no facts present to warrant the giving of such instruction.

IV. It will be observed that the issue tendered in the second count of the petition is predicated upon the allegation that there was an entire failure on the part of the defendant company to deliver a policy as applied for, and in payment of which the note of W. J. Armstrong was given. Counsel for appellant does not question the right of plaintiff to recover upon proof of the matter alleged in said count. But it appears in connection with the evidence offered by plaintiff in chief—and this without dispute—that a policy such as was called for by the application of said W. J. Armstrong was issued by the defendant company, and that the same was forwarded to him by mail, and that the package was actually delivered to him by the local postmaster. He says that the policy was handed to him, but that he never opened it, and told the postmaster to send it back. At the close of plaintiff's evidence in chief the defendant moved for a directed verdict on the ground that a delivery of the policy was affirmatively and without dispute shown by the evidence. This motion was overruled, and the court submitted this branch of the case to the jury upon two instructions.

In the thirteenth instruction it is said that the depositing of the policy by the defendant in the postoffice, properly addressed to the insurance applicant, with post-
4. DELIVERY OF age prepaid, would constitute a good delivery
   policy.          of such policy. Such is undoubtedly the law.
1 May on Insurance (4th Ed.) section 55, and cases cited in note.

In the fourteenth instruction it is said: "As to the second count of plaintiff's petition, you are instructed that if you believe from the evidence that the defendant did not deliver to the said W. J. Armstrong any policy of insurance contracted for by him within a reasonble time after his application for insurance had been made and forwarded to said company, then the said W. J. Armstrong was not bound to accept a policy of insurance tendered to him after a reasonable time elapsed; and, if you further find that he did not accept any policy tendered to him after such time, then the plaintiff would be entitled to recover upon this branch of the case." . We agree with counsel for appellant that the latter instruction was wholly foreign to the issues presented by the pleadings, and for that reason, if for no other, should not have been given. So, too, we think the motion to direct a verdict should have been sustained. A failure to deliver was the only matter compained of, and the record shows affirmatively that a delivery was in fact made. The subject of an unreasonable delay in making delivery is nowhere suggested in the record until the fourteenth instruction is reached. Something is said in argument concerning the disposition of the policy after it was refused by Armstrong. We cannot see how it is material to consider what disposition he made of the policy after receiving it. Certainly he could not clothe himself with the right to recover back the premiums he had paid by destroying the policy, by giving it back to the postoffice authorities, or by making any other voluntary disposition of the same.

5. INSTRUCTION: unwarranted by issue.

Other assignments of error need not be noticed. Where the complaint may be said to be well-founded, the error is either made clear by what we have already said, or it is of such character that it is not likely to arise upon another trial. For the errors pointed out, the judgment is reversed, and remanded for further proceedings according to law.—REVERSED.