DUPRIEST *v*. AMERICAN CENTRAL LIFE INSURANCE COMPANY.

Opinion delivered January 9, 1911.

INSURANCE—EFFECT OF MAILING POLICY TO INSURED.—Where nothing remains to be done by the insurer, the mailing of a policy of life insurance, duly executed, to the insured constitutes a delivery; and this is true although the policy was mailed to a wrong address and was returned to the insurer.

Appeal from White Circuit Court; *Hance N. Hutton*, Judge; reversed.

STATEMENT BY THE COURT.

This is a suit on a life insurance policy. On the 28th day of November, 1908, J. B. Dupriest made application to the American Central Life Insurance Company through Louis Lorch, its local agent at Searcy, Arkansas, for a policy of insurance upon his life for $2,000, and his wife A. H. Dupriest was named as beneficiary. He was examined by Dr. Hassell, the local medical examiner of the company at Searcy, and his application was forwarded to the company. On the same day he executed to Louis Lorch his note for the first premium, payable 30 days after date. Lorch, after retaining the amount of his commissions for securing the application, drew a check in favor of the company for the amount of the premium due it. The check was introduced in evidence, and shows it was paid. The policy was issued by the company, and sent to Lorch to be delivered to Dupriest. Dupriest lived in the country about 28 miles from Searcy, and had instructed Lorch to deliver the policy to the medical examiner of the company for him. Lorch carried the policy to the examiner, who refused to receive it. Lorch then put it in an envelope with postage prepaid, addressed to J. B. Dupriest, Vilonia, Arkansas, and placed the letter in the postoffice. The letter containing the policy was returned to Lorch, and he, not knowing the exact postoffice address of Dupriest, decided to keep it until the latter came to Searcy when he would give it to him.

In the policy, the postoffice address of Dupriest was named as Mt. Vernon. When Lorch mailed him the policy, he believed his address to be Vilonia. It was afterwards ascertained that Dupriest received his mail at Romance. It appears that Mt. Vernon, Romance and Vilonia were all country postoffices in the neighborhood where Dupriest resided.

During the latter part of December, 1908, the Insurance Company received information that Dupriest was not in good health when he applied for the insurance, and it directed Lorch to return the policy for cancellation under the following provision contained in it:

"The payment of the first annual premium herein is a condition precedent to the taking effect hereof, and this policy shall not become binding upon the company until said premium is actually paid during the lifetime and good health of the in-

sured; and the delivery of this policy without such payment shall not be a waiver of such precedent condition."

Lorch received this instruction after the policy had been returned to him from the Vilonia postoffice, and before he again saw Dupriest. He returned the policy to the company in compliance with its directions, and it was cancelled by the company.

The defendant company also adduced evidence tending to show that Dr. Hassell received information after the issuance of the policy that Dupriest did not desire him to receive the policy for him. That he, Dupriest, had found out since his examination that he was not in good health at the time he was examined, and that for that reason he was not entitled to the policy. Neither the Insurance Company nor its agent, Lorch, returned the amount of the premium to Dupriest.

Dupriest died on June 19, 1909, of a disease from which, according to the testimony of the defendant company, he was suffering at the time he applied for the policy of insurance. It might have been inferred from the evidence adduced in behalf of the plaintiff that he was in good health when the policy was applied for, and did not direct that the policy should not be received for him on account of not being entitled to it. Such other facts as are deemed necessary to proper determination of the issues raised by the appeal will be stated or referred to in the opinion.

At the conclusion of the testimony the court directed a verdict for the defendant. From the judgment rendered A. H. Dupriest, the beneficiary in the policy and the plaintiff in the action, has duly prosecuted an appeal to this court.

*J. N. Rachels* and *Charles N. Robinson,* for appellant.

*S. Brundidge, Jr.,* and *Harry Neelly,* for appellee.

HART, J., (after stating the facts). Did the court err in directing a verdict for the defendant? In deciding this question it is necessary to determine whether there was a delivery of the policy; for if it was not delivered there was no contract of insurance, and plaintiff can not recover.

It is very well settled that where nothing remains to be done by the insurer, the mailing of the policy, duly executed, to the insured constitutes a delivery. *Mutual Reserve Fund Life As-*

*sociation* v. *Farmer,* 65 Ark. 581; *Armstrong* v. *Mutual Life Insurance Co.,* 96 N. W. 954, 121 Iowa 302; *Kilborn* v. *Prudential Ins. Co.,* 99 Minn. 176; *Triple Link Mut. Indemnity Ass'n.* v. *Williams,* 121 Ala. 138, 77 Am. St. Rep. 34, 26 So. 19.

In the latter case a special plea was interposed by the insurance company that the contract of insurance should not take effect until the first assessment and admission fee was paid, and the policy was delivered during the life and continuance in good health of the insured. The plaintiff replied to this plea, and in discussing the sufficiency of the replication the court said:

"The policy recites that Williams (the insured) resided at that time at Bessemer, Alabama, and the policy was set out in the complaint. It was not necessary for this replication to reiterate his residence at that place, even conceding that there need have been any comment on that subject, which is by no means clear, since it may well be that the mailing of the policy to the place where the officers of the company supposed him to reside, as is evidenced by the recital, would as effectually evidence their intention to deliver it, though they may be mistaken in point of fact, as mailing it to his true address."

Applying this rule to the case at bar, we think the delivery or nondelivery of the policy was a jury question. The evidence for the plaintiff shows that the defendant company received and accepted the first annual premium, issued the policy, and sent it to its local agent at Searcy to be delivered to the insured. That the agent in good faith mailed the policy to the insured at Vilonia, which he believed to be the postoffice at which he received his mail. It is true that the policy afterwards came into the physical control of the agent because he had mailed it to the wrong postoffice; but we hold that where the agent in compliance with the directions of the insurer and in good faith places the policy, duly executed, in the postoffice with the postage prepaid, addressed to the insured, so that he would receive it at the address given in due course of mail while in good health, such act constitutes a delivery and completes the contract of insurance. This is so because there is in such case an intention on the part of the insurer to put the policy beyond the control of the insurance company, and the insured must acquiesce in this intention.

Nor can it be said as a matter of law under the evidence that the insured refused to receive the policy, or directed that it should not be delivered to Dr. Hassell for him.

One of the conditions imposed by the terms of the policy was that the insured should be in good health at the date of the payment of the first annual premium. It is manifest that the insurance company had the right to impose this condition.

On this point the company introduced Dr. Hassell, who testified that Dupriest sent him word by his brother not to receive the policy for him because he had found out since the application was made that he was not entitled to the insurance for the reason that he was not in good health at that time. It will be noted that the application of Dupriest, his examination by Dr. Hassell, and the payment of the first annual premium was all done on the same day. Dr. Hassell further stated that Dupriest subsequently admitted to him that he was glad that he had not received the policy for him. It cannot be said, however, that this testimony is uncontradicted.

Dr. Hassell was the medical examiner of the insurance company, and to that extent was interested in the result of this lawsuit.

There appears in the testimony a letter from Dupriest to the company, written subsequently to the time of the occurrence of the matters testified to by Dr. Hassell, in which he states that he did not know that the policy had been issued, and was not to blame in the matter. It is evident that if he told Dr. Hassell that he was glad he had not received the policy for him he knew it had been issued, and, of course, the contrary would be true, that is, if he did not know that the policy had been issued, he could not have told Dr. Hassell that he was glad he had not received it for him. Lorch also testified that Dupriest rode into Searcy, a distance of 28 or 30 miles, when he made his application for insurance and was examined; that he appeared to be stout and well at the time.

Hence we conclude that there was testimony from which the jury might have inferred that Dupriest was in good health when he made the application for insurance and paid the first annual premium, and that he did not direct that the policy should not be received by Dr. Hassell for him.

Because the court erred in directing a verdict for the defendant the judgment will be reversed and the cause remanded for a new trial.