NATIONAL LIFE ASSOCIATION *v.* SPEER.

Opinion delivered January 26, 1914.

INSURANCE—LIFE INSURANCE—DELIVERY OF POLICY.—It was agreed between an applicant for life insurance and the insurance company, that the latter should incur no liability under the application until the policy was issued and delivered to the applicant while in good health. The applicant refused to accept the policy from the agent of the company who tendered the same to him. In an

action to recover the amount of the policy after the death of the applicant; *Held,* the policy was never delivered to the applicant, and never became binding on the company.

Appeal from Greene Circuit Court, First Division; *W. J. Driver,* Judge; reversed.

STATEMENT BY THE COURT.

The appellee sued appellant to recover the sum of $2,000 on a policy of insurance which she alleged was issued by appellant and delivered to her husband, Dr. W. T. Speer; that her husband complied with the terms of the contract of insurance, and that he died on the 17th day of October, 1911, while the policy was in full force; that proof had been made of his death according to the terms of the contract of insurance and demand had been made on appellant for the payment of the policy, which it had refused. She therefore prayed for judgment for the amount of the policy, with interest, and penalty, and an attorney's fee.

Appellant defended on the sole ground that the policy had not been delivered under the agreement for insurance, which provided that the association shall incur no liability until the policy has been issued by the association and delivered to Doctor Speer while in good health.

The facts established by the undisputed evidence were as follows: On September 21, 1911, E. W. Wall took the application of Dr. William Thomas Speer for a $2,000 policy on the latter's life in the appellant company, which application Wall sent to the home office at Des Moines, Iowa. A policy for $2,000 was issued to Dr. W. T. Speer October 4, 1911, and mailed by the company at its home office to Wall, its soliciting agent at Paragould, Arkansas.

On the 26th of September, 1911, C. D. Bray, another agent of appellant, took Doctor Speer's application for insurance in the sum of $2,000, and had him submit to a medical examination, which was duly reported to and approved by appellant October 3, 1911. Doctor Speer

informed agent Wall that he (Speer) would not take the policy from him (Wall), but would take it from Bray. Agent Wall, after Speer had decided to take the policy from Bray, wrote to the appellant to return to him (Wall) the payment which Wall sent the company with Doctor Speer's application, stating that the doctor had decided not to take the policy with him (Wall) but with agent Bray. This letter was written before the death of Doctor Speer. Bray also wrote the company inquiring what disposition had been made of Speer's application. Their reply was that, upon investigating the matter, they had found that the policy had been issued October 4 and mailed to Ernest Wall, at Paragould. In that letter the company explained that Mr. Wall had sent in an application of Doctor Speer, and that Wall's application had reached them first. They also stated that the application through Wall had been cancelled at his request and his notes returned to him, and that the policy was issued to his (Bray's) credit, and that they had written Wall requesting him to return the policy to them, and that upon receipt of the policy from him they would send the policy to Bray.

The policy on Wall's application had been issued and forwarded to Wall before the receipt of Wall's letter stating that Doctor Speer would not take the policy with Wall; but the policy had not been received by Wall when he wrote this letter to the company, and in accordance with Wall's letter asking for the return of his money for the reason that Doctor Speer had decided to take the policy with Bray the company returned said amount to Wall.

The application, which was copied in the policy mailed to Wall, contained this provision: ''I agree that the Association shall incur no liability under this application until the policy has been issued by the Association and delivered to me while in good health.''

The policy introduced in evidence, which was mailed to agent Wall, was issued upon the application made through agent Wall, and not agent Bray.

The record shows that "the defendant, in open court, and before the jury, stated that it waived all defenses pleaded by it in its answer except the defense of the delivery of the policy."

The court instructed the jury that if the defendant company "issued a policy upon the life of Dr. William Thomas Speer on the 4th day of October, 1911, and deposited same in the United States postoffice at Des Moines, Iowa, defendant's home office, addressed to Ernest Wall, Paragould, Ark., and that such policy was received by said Wall, then the court charges you that this constituted a delivery of said policy within the meaning of the law, and that it would be your duty to find for plaintiff for the amount of said policy, together with 12 per cent penalty and 6 per cent interest."

The appellant duly excepted to the giving of the instruction. There was a verdict and judgment in favor of the appellee, from which this appeal has been duly prosecuted.

*R. P. Taylor* and *Bartley & Douglass,* for appellant.

1. When Doctor Speer submitted a proposition to appellant for a policy of insurance on his life through its agent Wall, and thereafter, with the consent of Wall, withdrew this proposition, then no contract of insurance was, or could have been, entered into by virtue of this proposition. Nothing short of actual delivery of the policy issued under this proposition coupled with acceptance thereof by Doctor Speer, could give life to the policy.

2. In no event would there be any liability, whether on a policy issued under the application through Wall, or on the application through Bray, unless the policy was delivered to Doctor Speer while in good health.

Issuance of the policy and forwarding same to the agent through the mail does not constitute delivery to the insured. 108 Mo. App. 61; 97 Ark. 229, 133 S. W. 826; 30 Mo. App. 589; 156 *Id.* 281; 136 S. W. 899; 149 S. W. 33; 28 Fed. 705; 30 Fed. 545.

*Block & Kirsch,* for appellee.

In the absence of any restricting condition, the mailing of a contract under the circumstances in proof here, constitutes a delivery, and consummates the contract. 65 Ark. 581; 97 Ark. 229; 108 N. W. 861; 30 S. E. 273.

We think that the unconditional mailing of the policy by the appellant to Wall, its agent at Paragould, constituted a delivery thereof to Doctor Speer, and that the reasoning of the court in *Insurance Co.* v. *Babcock,* 30 S. E. 273, *supra,* is conclusive. See also 89 Ark. 471; 9 Am. & Eng. Cases, 218.

WOOD, J., (after stating the facts). The only question presented by this record is, was the mailing of the policy to Wall and its receipt by him alone sufficient to constitute a delivery to the assured under the terms of the contract of insurance?

The court can not make agreements for parties, but must construe and enforce the agreements as the parties themselves have made them.

It was agreed between Doctor Speer and the appellant that the latter should "incur no liability under the application until the policy was issued and delivered to Doctor Speer while in good health." Under this agreement the court erred in its instruction.

The issuing of the policy and mailing the same to appellant's agent Wall and the receipt of the policy by Wall did not constitute a delivery of the policy, under the above agreement. Wall was the agent of the appellant, and not the agent of Doctor Speer. There is nothing in the testimony to show that Wall, after he received the policy, did any act that would constitute a delivery by him of the policy to Speer. On the contrary, the testimony of Wall shows that Speer told him that he had decided to take the insurance with agent Bray; whereupon Wall wrote the company notifying it that Speer had declined to take the policy and asking it to refund the money that had been paid on the policy, and the day after Speer died Wall returned the policy to the company.

There was further testimony in the record showing that the application of Speer made through Wall had been cancelled at Wall's request and his notes returned to him, and that the policy was issued to the credit of Bray, another agent of appellant, and that as soon as the policy was returned to appellant by Wall it would send the policy to agent Bray to be delivered to Speer.

This undisputed evidence shows that the appellant never lost control of the policy after it was issued. It had never been delivered by appellant's agent Wall because Speer refused to accept it from him and Wall held it thereafter for his company and not for Speer, and the testimony shows that the company still claimed dominion over the policy by saying that as soon as it was returned to it by their agent Wall it would be sent to their agent Bray for delivery. As we view the undisputed evidence, the company never at any time delivered the policy to Speer.

Under the broad terms of appellant's waiver, we must assume that Speer was in good health at the time the policy was issued and mailed to appellant's agent Wall and at the time the same was received by him to be delivered, and that the agent, upon inquiry, would have ascertained such to be the fact. But, notwithstanding such was the fact, it was still the duty of the agent, under the conditions contained in the application, to make inquiry and to ascertain such to be the fact before he could make delivery of the policy to Speer. Therefore, the policy was not mailed to Wall by the appellant to be delivered unconditionally, and Wall was still the agent of appellant, after the policy had been received by him, to ascertain whether the conditions as to the good health of the appellant existed.

The Court of Appeals of Missouri, in *Kilcullen* v. *Life Ins. Co.,* 108 Mo. App. 61-68, said: "The effort of the deceased to obtain a policy of insurance was but an invitation or proposal, which was entertained by defendant upon the terms expressed in the receipt for the premium payment and the latter received upon the con-

ditions therein recited.   The application being a naked offer to enter into a contract of insurance, the defendant was at liberty to accept or reject it at its pleasure, and, if accepted, it was entitled to interpose such conditions as it saw fit.   It therefore, reserved, among others, the right to require before the delivery of the policy, that the conditions under which the proposition had been made and favorably considered by it remain undisturbed and unchanged, and that the subject of insurance continue alive and in good physical condition.   The contract itself could not become effective until the proposition submitted to the opposite party had been accepted on the terms the latter recited and defined and notice of such acceptance conveyed to the proposing party.   The mere act of passing the manual possession of the instrument evidencing the contract to be entered into might have been dispensed with, where, in such event, the defendant had communicated (to) the assured by other method the acceptance of the proposal, thereby completing the contract, but in this case no intimation or other means were resorted to and the policy of insurance remained in the custody of defendant's agents without being delivered, and the contract failed of consummation and never became operative."   See *Horton* v. *Insurance Company*, 151 Mo. 604-620.

So here Speer declined to accept the policy from the agent Wall, and Wall never attempted thereafter to hold the policy for him, and neither the company nor Wall mailed the policy directly to Speer.   In other words, there is no testimony in this record to warrant the conclusion that the appellant ever relinquished absolute dominion over the policy to Speer from the time it was issued.   Appellant was never in a situation where it could not have demanded and required a return of the policy, for it never passed into the control of Speer, and Speer, by refusing to take it from Wall, precluded the consummation of the contract of insurance.

If appellant itself, or if Wall, its agent, after receiving the policy, had mailed the same to Speer, or if Wall,

by any other act of his, after receiving the policy, had shown that he held the same for Speer, the case might have been different. See *Dupriest* v. *Insurance Co.*, 97 Ark. 229-232, where this court, speaking through Mr. Justice HART, said: "Where the agent, in compliance with the directions of the insured, and in good faith, places the policy, duly executed, in the postoffice, with the postage prepaid, addressed to the insured, so that he would receive it at the address given in due course of mail, while in good health, such acts constitute a delivery and complete the contract of insurance. This is so because there is, in such case, an intention on the part of the insurer to put the policy beyond the control of the insurance company, and the insured must acquiesce in this intention." See also *Travelers' Fire Ins. Co.* v. *Globe Soap Co.*, 85 Ark. 169.

The appellee relies upon the case of *New York Life Ins. Co.* v. *Adelaide A. Babcock* (Ga.), 42 L. R. A. 88. The conclusion there reached under the facts and the statute of Georgia was correct. But the facts of that case distinguish it from this. If the facts were like the case at bar we would consider the reasoning of that case unsound and the doctrine not the law, and would decline to follow it.

Judgment reversed and cause dismissed.