MISSOURI STATE LIFE INSURANCE COMPANY *v.* BURTON, ADMINISTRATOR.

Opinion delivered May 14, 1917.

LIFE INSURANCE—LIMITATIONS IN POLICY—CONCERNING DELIVERY.— Where an application for a policy of life insurance provided that the policy issued pursuant thereto was to become operative only upon a delivery of the policy to the assured, while in good health, the fact that the policy was executed by the company and mailed to its own agent for delivery conditioned upon the applicant being found to be in good health, does not constitute a delivery of the policy.

Appeal from Faulkner Circuit Court; *T. C. Trimble,* Judge; reversed.

*Moore, Smith, Moore & Trieber,* for appellant.

1. The policy was never accepted and delivered during lifetime and good health, and no insurance ever became effective. 66 Ark. 612; 111 *Id.* 173; *Id.* 324; 73 *Id.* 117; 82 N. W. 966; 77 Ark. 117; 122 Ark. 124; 162 S. W. 779; 144 N. W. 543; 179 S. W. 749; 125 Ark. 115; 144 S. W. 362; 73 N. E. 842. The court erred in its instructions.

*Sam Frauenthal* and *R. W. Robins,* for appellee.

1. The policy was issued and delivered. 111 Ark. 173, 324; 66 *Id.* 612. None of the cases cited by appellant are in point. 22 S. W. 87; 1 Joyce on Ins., § 62; 16 Am. & Eng. Enc. 855; May on Ins., p. 71; 65 Ark. 581; 89 *Id.* 471; 42 L. R. A. 88; 99 Minn. 176; 51 Col. 238; 108 N. W. 1025; 138 N. W. 459; 45 L. R. A. (N. S.) 743; 164 Cal. 712; 130 Pac. 726; 131 N. W. 246; 34 L. R. A. (N. S.) 373; 224 Fed. 74; 73 N. E. 842.

2. The contract being for his benefit, the acceptance thereof is presumed. 60 Ark. 36; Lawson on Pres. Ev., p. 364.

3.    The instructions express well established principles of law.    Cases *supra.*

McCULLOCH, C. J.    This is a suit on a policy of insurance alleged to have been issued by defendant company on the life of plaintiff's intestate, Colia Diffee.    Plaintiff recovered judgment for the amount sued for in the trial of the cause below before a jury, and defendant has appealed.

The facts deemed to be material in the disposition of the case here are undisputed.    Diffee was a farmer residing in Faulkner County near the village of El Paso, and on June 6, 1914, applied to defendant's soliciting agent for a policy of insurance on his life in the sum of $2,500, payable to his estate at his death.    The application was dated June 6, 1914, and contained the following stipulation:

"That the insurance hereby applied for shall not take effect unless the premium is paid and the policy delivered to and accepted by me during my lifetime and in good health."

The applicant was examined by the local medical examiner of the company at El Paso on June 9 or June 10, 1914, the precise date not being definitely settled by the testimony, and the application was favorably reported by the examiner.    It is conceded that Diffee was then in good health and was a proper subject for life insurance.

Gunn, the soliciting agent for the company, was operating under J. D. Dunaway, the general agent residing at Conway, Arkansas, and the application was, after the completion of the examination, delivered by Gunn to Dunaway and by the latter transmitted to the home office of the company at St. Louis, and received there on June 13, 1914.    The application took its usual course through the several departments of the company, and it was approved by the company on June 19, 1914, the policy was written and dated on June 20, and mailed out to Dunaway on June 22, for delivery to the applicant.    A letter of in-

struction addressed to Dunaway accompanied the policy, in which the direction was given that no policy should be delivered unless premium was settled and applicant was in good health.

There is a little conflict in the testimony, not deemed material, however, as to the date of the policy. A witness testified that he saw the policy in the possession of Dunaway on June 25, 1914, and observed on the back of it that it bore date of June 14. A copy of the policy exhibited as evidence shows that it was dated June 20, and that the outside cover of the policy does not show its date, except that there is a statement reciting that the maturity of premium was to be June 14. It is clearly shown from the testimony that the maturity date of the premium was antedated so as to carry it back to the time when the assured would get the benefit of a lower rate of premium corresponding with his age on that date. It was customary for the general agent to deliver policies through the solicitor who took the application and on receipt of the policy Dunaway wrote to Gunn informing him of the receipt of the policy so that the latter could get it and make delivery to the applicant.

Diffee died on June 24, 1914, and the policy was never delivered to him. There is some conflict in the testimony as to when Diffee became seriously ill, but we deem that conflict to be unimportant. The illness which caused his death was typhoid fever, which developed after the medical examination was completed. Dunaway heard of the death of Diffee soon after he had written the letter to Gunn, and he thereupon addressed a letter to the home office of the company giving information of Diffee's death and explaining that the application had doubtless been made in good faith, and that it was just a case of an unexpected death. The officer of the company at the home office directed Dunaway to return the policy to that office, which was done, and it was canceled. Diffee gave a negotiable promissory note to Gunn for the amount of the premium at the time the application was secured, and

Gunn sold the note to a Mr. Davis at Morrilton. Shortly after the death of Diffee and the return of the policy to the home office, Dunaway, upon instructions from the company, tendered to Davis the amount of the note, which was then immature, but the tender was refused, and subsequently the company tendered the money to the plaintiff, as administrator of the estate, the note having in the meantime been paid to Davis out of the funds of the estate.

The sole defense presented by the defendant is that there was no delivery of the policy, and that for that reason no liability was incurred, it being a part of the contract that the policy should not take effect until delivered to and accepted by the assured during his "lifetime and good health." The only question, therefore, for our consideration is whether or not there was a delivery of the policy within the meaning of the terms of the contract.

That question is, we think, clearly settled against the claim of the plaintiff by the decision of this court in the case of *National Life Association* v. *Speer,* 111 Ark. 173. We held in that case that under a contract similar in terms to the one now before us no liability was incurred until the policy was delivered to the assured. In that case, as in the present one, the application for insurance contained the stipulation that the insurer was to incur no liability until the policy had been issued and delivered to the assured while in good health, and the policy, after being executed at the home office of the company, was mailed to a local agent for delivery to the assured. There was no delivery of the policy to the assured, and the latter died while the policy was in the hands of the local agent. In disposing of the case, we said:

"Under the broad terms of appellant's waiver, we must assume that Speer was in good health at the time the policy was issued and mailed to appellant's agent Wall, and at the time the same was received by him to be delivered, and that the agent, upon inquiry, would have ascertained such to be the fact. But, notwithstanding

such was the fact, it was still the duty of the agent, under the conditions contained in the application, to make inquiry and to ascertain such to be the fact before he could make delivery of the policy to Speer. Therefore, the policy was not mailed to Wall by the appellant to be delivered unconditionally, and Wall was still the agent of appellant, after the policy had been received by him, to ascertain whether the conditions as to the good health of the applicant existed.''

The facts in the case just referred to are slightly different in one respect in that the assured had decided before the policy could be delivered to him to make a new application to the same company through another agent, and that was the reason why the policy was not delivered to him by Wall, the soliciting agent who had taken the first application. It is earnestly insisted that that difference in the facts of the two cases takes the present case out of the operation of the rule there announced, but we do not think that the difference in the facts alters the application of the rule. The additional facts just referred to concerning that case were mentioned in the opinion merely to show that Wall, the agent, was not holding the policy for the convenience of Speer, the assured, so as to make him the agent of the assured instead of the company, and to constitute a delivery of his policy, but the point upon which liability of the company was denied was that according to the terms of the application no liability was to be incurred until the delivery of the policy, and that the mailing of the policy by the company to its own agent for delivery if the applicant was found to be in good health, did not constitute a delivery so as to put the policy in force. The opinion recognized the clear distinction between the mailing of a policy directly to the assured or mailing it unconditionally to the agent of the company for delivery, either of which would have constituted a delivery of the policy as held in *Dupriest* v. *Insurance Co.,* 97 Ark. 229, and a mailing of the policy to the agent of the company for delivery after ascertainment of the ap-

plicant's state of good health. A still later decision of this court in the case of *Peebles* v. *Eminent Household of Columbian Woodmen,* 111 Ark. 435, emphasizes the position of the court on this question. In that case there was involved the question of waiver of a forfeiture by reason of the assured not being in good health at the time of the delivery of the policy, the waiver being asserted by reason of the knowledge of the local officers of the insurance body to whom was committed the duty of making delivery of the policy. We held that a delivery of the policy with knowledge of the applicant's state of health constituted a waiver because the local officer was charged with the duty of ascertaining the condition of the applicant's health. That conclusion resulted from the view that the policy was not sent to the local officer unconditionally for delivery, but that he had a duty to perform with respect to its delivery, and that the policy did not take effect until that duty was performed. We must, therefore, treat the rule as being settled in this State that under a contract restricting the period when the liability is to be incurred to the delivery of the policy to the assured, while in good health, the fact that the policy is executed by the company and mailed to its own agent for delivery conditioned upon the applicant being found to be in good health does not constitute a delivery of the policy. It is unnecessary to ascertain the state of the law in other jurisdictions, a question which has been argued with so much zeal and ability by counsel, since we find that this court has heretofore emphatically announced its decision on the subject.

Learned counsel for the plaintiff earnestly rely on a decision of the Georgia Court of Appeals in the case of *New York Life Insurance Co.* v. *Babcock,* 42 L. R. A. 88, where a different rule was announced in the opinion of the court, but we considered that case carefully in the *Speer* case, *supra,* and declined to follow it. We said that the Georgia court reached the correct conclusion from the facts of the case on account of a statute in force there

which made a delivery of an insurance policy nonessential to the commencement of liability, but we expressed the view that the reasons given by the court and the doctrine of law announced were unsound.

We are clearly of the opinion that this cause is entirely controlled by the *Speer* case, *supra,* and according to the undisputed facts there is no liability on the part of the defendant. The judgment is, therefore, reversed and the cause is dismissed.