# CASES

## ARGUED AND DETERMINED

IN THE

# Supreme Court of South Dakota

---

NORDNESS v. MUTUAL CASH GUARANTY FIRE INS. CO.

In an action on a fire policy, defended on the ground that the parties' minds never met, insured's testimony, in support of his complaint that after applying for and before the delivery of the policy he had taken the insurance intended to be covered thereby in another company, cannot be excluded from consideration on his objection that it is not within the issues raised by the company's general denial.

Where insured applied for fire insurance not intending to accept the policy if he could obtain a satisfactory one in another company, and there was no meeting of minds between him and the insurer as to the amount of the premium, as to the length of the term of insurance, or as to the amount of concurrent insurance allowable, he could not, by accepting delivery of the policy after the property was burned, insurer not knowing of the fire, bind insurer for the loss.

(Opinion filed, February 5, 1908.)

Appeal from Circuit Court, Day County. Hon. J. H. Mc Coy, Judge.

Action by L. L. Nordness against the Mutual Cash Guaranty Fire Insurance Company on a fire policy. From a judgment for plaintiff and an order refusing a new trial, defendant appeals. Reversed.

*Boyce & Warren,* for appellant.

The application did not contain all the elements of a contract; the policy as written varied from the terms proposed in the application; the statement in the application as to other insurance was not true; the plaintiff wrote additional insurance after making the application without notice to the defendant; the plain-

tiff renewed the insurance for which this application was made in another company; and the plaintiff expressly rejected the policy and did not pay or offer to pay the premium. Under these circumstances no binding contract was made. Mutual Life Ins. Co. v. Young, 23 Wall.; Yore v. Bankers & Mer. Mut. Life Assoc., 88 Cal. 609; Stephens v. Capital Ins. Co., 87 Iowa 283; N. Y. Life Ins. Co. v. McMaster, 30 C. C. A. 532; Milville, etc., Ins. Co. v. Collerd, 38 N. J. L. 480; Clark v. Ins. Co. of N. Amer., 35 L. R. A. 276; Kerr v. Milwaukee Mechanics Ins. Co., 54 C. C. A. 616. The officers of the company had no power to waive the by-laws and deliver the policy in the first instance without pre-payment of the premium or cash deposit as it is called. The by-laws are made by the members of the company for the government of their officers, and cannot be waived by such officers. Baxter v. Chelsea Mut. F. Ins. Co., 79 Am. Dec. 730; Smith v. Haverhill Mut. F. Ins. Co., 79 Am. Dec. 733; Brewer v. Chelsea Mut. F. Ins. Co., 14 Gray 203; Montgomery v. Whitbeck, 12 N. D. 385

*Sears* & *Potter,* for respondent.

When a proposition is tendered by one party and accepted by the other, a contract is effected by the meeting of the minds of the parties. Nothing remains to be done by either party. The terms of the proposition on plaintiff's part were embodied in the written application; the mailing of the policy in pursuance of that application, and its receipt by the plaintiff, constitutes an acceptance. Caly v. Masonic Assn., 26 L. R. A. 171; N. Y. Life Ins. Co. v. Babcock, 42 L. R. A. 88, 9 Cyc. 247; St. Paul F. & M. Ins. Co. v. Neidecken, 43 N. W. 695.

FULLER, J. To the complaint in this action on a fire insurance policy, there was a general denial, and the issues thus presented were tried by the court without a jury. This appeal is from a judgment for the full amount claimed and from an order denying a motion for a new trial.

The ultimate question of law discussed at the oral argument and in the briefs of counsel is determinable from the following facts and circumstances: Subject to approval at the home office of appellant and by the use of one of its blanks, respondent, a retail merchant at Waubay, made application May 16, 1903, for a con-

current policy of $1,000 on his stock of general merchandise, to become operative at noon on the 7th day of August, 1903, but such application is silent as to the amount of premium to be paid and the term for which the property was to be insured. While the stock was actually insured for $3,500 at the time of making the application wherein respondent represented the concurrent insurance to be but $3,000, appellant issued the policy for $1,000 during the month of July, without authorizing any concurrent insurance, and forwarded the same to respondent, by whom it was received, together with a bill for the premium of $30 about one week before the 7th of August, when by its terms it was to become effective. This policy was retained by respondent until the 10th day of August, 1903, when he returned it to appellant at Sioux Falls, with the statement, "I cannot recollect ever applying for any insurance in your company, and I cannot use this as I have taken all the insurance I wish to carry." Appellant's secretary promptly remailed the policy to respondent with a statement of the account as before, and a brief letter to the effect that some one had evidently slandered his company, which was as safe as any in the state, and he hoped the matter would be reconsidered and the policy accepted. Two days after the receipt of this letter with the policy enclosed respondent again returned the same, and wrote appellant as follows: "Gentlemen: Your favor of the 12th inst, with inclosed policy has been received, and contents has been noted. I regret very much the occurrence, but really it slipped my mind entirely that I had made an application to your company for this risk, and I have renewed it with other company, so I cannot now use your policy, as if I kept it, it would insure my stock at full invoice value and I do not wish to do that as I feel I ought to carry some risk myself, consequently it becomes necessary to again return your policy." The foregoing letter with its inclosure was received by the company in due course of U. S. mail, and on the 26th day of August, 1903, the policy was mailed to respondent at Waubay for the third time, with the following letter, which reached him on the 28th instant about 24 hours after his entire stock of merchandise had been destroyed by fire: "Dear Sir: We beg to acknowledge

receipt of your favor of the 14th inst. in which you take the liberty to again return Policy No. 247, which was issued to you in strict accordance with your application, dated May 16th, 1903, signed L. L. Nordness, and witnessed T. H. Dravis. Which policy we issued and forwarded to you by mail on the 15th day of July, 1903, and which you held in your possession until the 10th day of Aug., 1903, at which time the policy had taken effect and not until then did you return the policy to us saying you could not recollect ever making application with this company for insurance. At which time we returned the policy to you, giving you a full explanation of the fact, relative to your application, but you again took the liberty and returned the policy, offering as an excuse that you were sorry, but that you had renewed your insurance with some other company. Now, Mr. Nordness, do you think this is a fair deal? We call your attention to the fact that you had this policy in your possession from the 15th day of July, 1903, up to the 10th day of the present month, at which time our policy was in force. Now then can you explain your reasons as given in your letter of the 10th inst., as to not remembering ever making an application to this company, while you had this policy in your possession and being in force at that time? In the face of this you attempt to cancel this policy and claim to have renewed with some other company. Had you returned this policy at the time you first received it it would have been perfectly satisfactory, but we can't understand why you should attempt to cancel it now which has a prior claim. We wish to be fair with all our members, but must insist that they comply with the terms of their contract, by virtue of their policy issued to them, and under no circumstances will we permit any member to cancel his policy being in force, until the preminum has actually been paid and then only in strict compliance with the terms of his policy. The right, however, to terminate a contract which has been entered into and taken effect is a right which can only be exercised by either party by a strict compliance with the terms of his policy relative to cancellation. We herewith return to you your policy by registered mail, and request you to favor us with your check for the amount of your premium." Thereupon respondent mailed his check to the com-

pany for the premium of $30 and on the following day forwarded notice of loss, but the receipt of the check was duly acknowledged on the 29th day of August before appellant had the slightest intimation that a fire had occurred.

After making the application and before receiving the policy under consideration, respondent procured policies from certain other companies, without the knowledge or consent of appellant so that his effective insurance amounted to $3,800 independently of the $1,000, to recover which this action was instituted. True, he stated in his first letter upon returning the policy to appellant that he had taken all the insurance he wished to carry, and again wrote that the $1,000 insurance for which he had made the application had been obtained elsewhere, and, as he desired to carry some of the risk, he returned the policy again so that the property would not be insured at its full value. Now it was shown by the undisputed evidence that at all times material to this action his stock of merchandise was worth from $6,000 to $6,500, and that he made application to appellant for the policy of $1,000 to take the place of and become effective at the expiration of an old line policy for the same amount. However, he had previously applied to the South Dakota Mutual Company, of Aberdeen, with the same intention, and had its policy for $1,000 in his possession when he made the application and received the policy in question, but of this he gave appellant no information whatever. With reference to the subject he testified as follows: "At the time I received the policy I had all of this here: The Commercial Mutual, $1,000.00; the Mitchell Mutual, $1,500.00, and one thousand in the South Dakota Mutual—that is the Aberdeen company. That is I had a policy, but there was a controversy between us—between the company at Aberdeen and myself about the premium. They raised the premium and we corresponded back and forth. It took quite a while before we got that adjusted, so that was pending at the time I got the policy—at the time I made the application and had received the policy. Q. Now when you received this policy from the Sioux Falls company did you return it to them? A. I did after I had fixed that up with Aberdeen. Cross-examination. At the time I signed the application which has been offered in evidence I had

a policy of insurance on this stock of goods in the Commercial of Mitchell, $1,500.00, and the Redfield company, the Merchants, I think, $1,000.00, and then I think the Phœnix—an old line company—I had $1,000.00 in that. That expired at the time this policy I made an application for was to take effect. Q. That you renewed? A. That was renewed with the other company. Q. Was that what you call the Aberdeen company? A. That was the one I was to renew with your company. Q. You renewed the old line company policy with the Aberdeen company? A. Yes, sir: but the intention was to renew it with yours." To properly characterize the transaction and determine whether the parties ever entered into the contract of insurance, the foregoing unchallenged testimony introduced by respondent in support of his complaint is entitled to consideration, and there is no merit in the present contention of his counsel that it is not within the issues raised by the general denial, and must be disregarded.

From the record before us it affirmatively appears that neither the amount of premium to be paid nor the period for which the property was to be insured was ever agreed upon, and the inference is irresistible that respondent never intended to accept the policy in question, if able to attain a satisfactory adjustment of his controversy with the Aberdeen company, whose policy he secretly held pending the negotiations for a reduction of its premium. Speaking for this court in Brink v. Insurance Association, 17 S. D. 238, 95 N. W. 930, Judge Haney said: "A contract of insurance is not complete without a meeting of the minds of the parties in respect to the following particulars: The sum to be insured, the time when the insurance is to begin and terminate, the subject to be insured, and the consideration."

Such uncontroverted proof of no mutuality or meeting of minds as to the premium, the period of insurance, and the amount of concurrent insurance would defeat an action by the company to recover the $30 which it promptly returned to respondent upon learning of the fire, and which before the loss respondent had repeatedly refused to pay.

Upon the facts and circumstances disclosed by the record, respondent was not entitled to recover, and the judgment appealed from is reversed.