Argued October 2, decided October 15, 1912.

**LATHROP v. MODERN WOODMEN OF AMERICA.**

(126 Pac. 1002.)

**Insurance— Fraternal Beneficiary Insurance— Assessments— Time for Payment.**

1.   Under provisions in a fraternal beneficiary certificate and the society's by-laws permitting payment of current assessments any time during the current month, a new member was not in default for nonpayment of the first month's assessment where it was paid on the 23rd, and the policy was received by the clerk of the local lodge between the 8th and 13th, though the member failed to call for the policy on the 13th as he had

Sig. 7

promised; he having complied with all other requirements necessary to make the insurance effective.

**Insurance—Fraternal Beneficiary Insurance—Delivery of Policy.**
2. Failure of the clerk of a local lodge of a fraternal beneficiary society to deliver a policy to a member before he was injured did not render it inoperative where the by-laws of the society provided that the clerk was not the agent of the Supreme Lodge, and the member had done all that was necessary to make the insurance effective, excepting payment of the current month's assessment which was paid at the time the policy was delivered, and before lapse of the time during which payment was permitted under the policy and the by-laws of the society.

From Josephine:    FRANK M. CALKINS, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is an appeal from a judgment of the circuit court of Josephine County, whereby Nina B. Lathrop was awarded $3,000 in an action to recover upon an insurance policy, issued by the Modern Woodmen of America, a corporation, upon the life of Charles M. Lathrop. There was a former appeal and reversal of a judgment in favor of plaintiff, which is reported in 56 Or. 440 (106 Pac. 328: 109 Pac. 81). The contentions of the parties are there fully stated, and will not be repeated here. Upon a re-trial plaintiff introduced evidence tending to show that the current dues, up to the time of the demise of plaintiff's decedent, had been paid at the time the certificate reached the local camp. The chronological order of circumstances in this case is as follows: On October 26, 1906, Lathrop applied for beneficial membership in the order, and at that time, or at his initiation, paid the fees and current dues, and on October 30, 1906, he was duly initiated into the order; on November 8, 1906, his policy was duly mailed from the head camp to the clerk of the local camp for delivery, and was received by the clerk of the local camp prior to November 13, 1906; that the clerk of the local camp notified Lathrop of the arrival of the policy, and requested him to come in and

pay the current assessment and dues for November, and receive the same; that decedent remarked, in effect, that the policy would not run away, and that he was not going to die yet, and intimated that he would be present at the next meeting, which would be on November 13th to get the policy; that he was not present at the next meeting, and that on November 21st he was injured by an explosion of dynamite, by which he was rendered unconscious up to the time of his death, which was on November 26, 1906; on November 23, 1906, his son called and paid the assessment current for November and received the policy. The testimony indicates that the only matter chargeable against the deceased at the time of the reception of the policy was the current assessment for November, which was payable on or before December 1, 1906. The section of the by-laws relating to this subject is as follows:

"Sec. 36. Every beneficial member shall be liable for payment of the assessment current at the date of the delivery of his certificate, and for all assessments levied thereafter; * * the term 'current,' as used herein, shall be construed to include the time from the first day of the month in which the last assessment became payable to the first day of the month in which the next assessment becomes payable."

The application for membership attached to the policy contains the following provision:

"I agree to make payment of all fines, dues and assessments legally levied, within the limit of time provided by the society's laws."

The benefit certificate contains the following conditions:

"(3) This certificate is issued in consideration of the warrants and agreements made by the person named in this certificate in his application to become a member of this society, and also in consideration of the payment made when adopted as a neighbor in prescribed form, and his agreement to pay all assessments, dues and fines

that may be levied during the time he shall remain a member of the society. (4) If payments assessed against the said member are not paid to the clerk of the camp of which he is or hereafter may be a member on or before the last day of the month following the levy of the same, then this certificate shall be null and void." AFFIRMED.

For appellant there was a brief over the names of *Mr. E. D. Briggs,* and *Mr. Benj. D. Smith,* with an oral argument by *Mr. Briggs.*

For respondent there was a brief and an oral argument by *Mr. H. D. Norton.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1, 2. From the foregoing facts we conclude that deceased at the time the certificate arrived at the office of the local camp clerk and up to the time of his death was not in default for nonpayment of current dues or the November assessment, which he was not compelled to pay until the next assessment should be levied, to wit, until December 1, 1906. It therefore follows that he was entitled to the unconditional delivery of his policy at the date it was received. This being the fact, the case hinges upon one proposition, viz., Did the failure of the clerk to deliver the policy into his actual possession, while in good health, render it ineffective? Such was the view this court was disposed to take at the last hearing; but on rehearing a majority of the court inclined to the view expressed by Mr. Justice KING, which is the latest exposition of our views on this subject, that, where the applicant for a policy had complied with all conditions required by the by-laws and was not in any way in default, the deposit of the policy with the clerk of the local camp, to be delivered to the applicant upon his compliance with the by-laws, constituted a delivery to him. The clerk of the local camp is expressly declared by the by-laws not to be the agent of the head camp.

He is a mere custodian of the policy for the purpose of exacting any dues or assessments that may be payable, and, if none are payable and the applicant is in good health, he is a mere, naked trustee for the applicant. We take it that from the date of its reception the applicant, whose current dues had been paid, was a full-fledged beneficial member, subject to all the liabilities and entitled to all the benefits of any other member, and that he would have been liable to the discipline of the camp, and perhaps to a civil action for the November dues had he failed to pay them before December 1st. The provision for delivering to him in person was intended (1) to secure the payment of current dues (which in this instance had been paid) ; and (2) to prevent the policy going astray by being placed in the custody of an improper person. The latter was for the protection of him and his beneficiary. The authorities supporting this view are cited in the opinion of Mr. Justice KING, and need not here be recapitulated. Most of the cases cited by counsel for appellant may, as we shall proceed to show, be distinguished from the case at bar. For instance, in *McLendon* v. *Woodmen of the World,* 106 Tenn. 695 (64 S. W. 36: 52 L. R. A. 444), the applicant was taken sick before the certificate was issued and sent to the local camp, and died before it was received there. The court held that there was no delivery. Here the certificate was issued by the defendant and received by the local clerk while the applicant was in good health, and nothing remained to be done but the act of placing him in physical possession of it.

In *Wilcox* v. *Sovereign Camp W. O. W.,* 76 Mo. App. 573, the applicant appeared at the office of the local clerk, and said he was ready to pay the dues and assessments required, but made no tender of the amount, and delivery of the policy was postponed by his consent because the consul commander was not in, whose custom it was to sign the certificates. Pending such delivery

he was drowned; and the order, in the plenitude of its fraternal benevolence, defended on the ground that his assessments had not been paid or tendered, and that the certificate had not been delivered. In that case the dues had not been paid. Considering the fact that the applicant in that case was present at the time appointed, requesting the delivery of his certificate and expressing his willingness to pay his dues then and there, the technical holding that he had not actually tendered the money, and was, therefore, in default, while possibly the law certainly operated to work a great moral injustice. In *Kohen* v. *Mutual Reserve Fund Life Ass'n* (C. C.) 28 Fed. 705, the applicant filed his application for a policy in a New York insurance company, with its local agent in Missouri, on November 7th, and underwent the required medical examination, paying his initiation fee, annual dues, and examination fee to the local agent. The application was received at the New York office on November 9th, and on the 10th was approved by the medical director, and on the same day was approved by one member of the executive committee. On the 10th of November the applicant was shot in St. Louis, and, in consequence of a telegram to that effect, the executive committee, on the 10th or 11th of November, erased the word "Affirmed" from the application and wrote "Declined," and the matter proceeded no further. The applicant died on the 12th of November. No policy was ever issued, and, in fact, the man was dead before any policy could have issued and been sent to him in the ordinary course of business. The case is not in point here. In *Michigan Mut. Life Ins. Co.* v. *Thompson,* 44 Ind. App. 180 (86 N. E. 503), the policy provided that it should not take effect unless the insured should be in good health at the time of its delivery. No premium had ever been paid, nor any note given for such premium. Previous to the arrival of her policy at the office of the

local agent, she became seriously ill from the bite of a poisonous spider, from which illness she ultimately died. The court sustained the action of the local agent in refusing to deliver the policy, saying that such delivery would have been a violation of the contract in two particulars:    (1) That part thereof requiring the payment of the premium; and (2) that it should be delivered while the applicant was in good health.    It will be noted again that this case differs from the case at bar in both these particulars, Lathrop being in good health at the time the policy was received at the local office, and not being in default for dues or assessments. The court in this case, however, states the law in regard to deliveries quite as strongly as plaintiff's counsel contends for it in the case at bar, saying:

"The receipt by an agent from his insurance company of a policy to be unconditionally delivered by him to an applicant is in law tantamount to a delivery to the insured, though the agent never surrenders possession of the policy, and though its delivery to the applicant is by contract made essential to its validity."

In *Owens* v. *Modern Woodmen of America* (Tex.) 130 S. W. 859, the application was filed on the 25th of September, and on the 27th of the same month the applicant was taken sick with typhoid fever, of which he died on the 18th day of October.    The policy arrived at the local camp the day before his death.    Under these circumstances, the court held that the delivery to the local clerk was not a delivery to the applicant.

It will be noted that in all these cases either something remained to be done or paid by the applicant, or that he was not in good health when the local clerk or agent received the policy.    We have been cited to no case where the applicant, not in default for dues or assessments and being in good health at the time the local clerk received the policy, has been held to have been uninsured,

and, if such a case should be found, we would decline to follow it; but would hold, as we now hold, that under such circumstances a delivery to the local clerk for the applicant is a sufficient delivery.

The judgment of the circuit court is affirmed.

AFFIRMED.