COURT OF HONOR *v.* HERING.

1. EQUITY—JURISDICTION—INSURANCE—FRAUD.

    In a suit brought to restrain any action at law upon an insurance policy which the insurer had never delivered, and which it charged in good faith was procured by fraudulent representations, also averring nondelivery, and it appeared from the testimony that the policy had never been delivered to the insured while he was in good health, as provided by the rules of the society, the court should have retained jurisdiction on the latter ground, although the alleged fraud was not sustained by the evidence.[1]

2. SAME—FRATERNAL BENEFICIARY ASSOCIATIONS—DELIVERY.

    Where it was provided by the rules of a mutual benefit assurance society that no policy should be in effect until it should be delivered to the applicant while in good health, and a similar clause was contained in his application, which also contained the statement that he had been acquainted with the rules, also where he became afflicted with paresis and was an inmate of an asylum before the policy was sent to the local officials of the association for delivery, and no undue delay or neglect on the part of complainant took place, the policy never went into effect, and although the applicant had been initiated into the society, being apparently in good health, a decree should have been entered for complainant association on its bill to enjoin an action on the certificate.

Appeal from Wayne; Codd, J. Submitted October 16, 1913. (Docket No. 24.) Decided January 5, 1914.

Bill by the Court of Honor against Minnie Hering for an injunction. From a decree for defendant, complainant appeals. Reversed.

---

[1] Upon the effect of stipulation in application or policy of life insurance that it shall not become binding unless delivered to assured while in good health, see notes in 17 L. R. A. (N. S.) 1144 and 43 L. R. A. (N. S.) 725.

*Beaumont, Smith & Harris,* for complainant.

*McHugh, Gallagher, O'Neil & McGann,* for defendant.

Ostrander, J. Complainant, a fraternal beneficiary society, organized under the laws of the State of Illinois, was applied to by Julius Hering for a benefit certificate, payable to defendant, Minnie Hering, his wife. The written application having been considered, and the said Julius Hering having been examined by the complainant's physician, a certificate was prepared and was forwarded to an officer or to officers of complainant's district court in Detroit. The application was dated March 26, 1910, and Hering was examined by the physician during the evening of that day. It was received at the office of the supreme court April 5, 1910; a certificate was issued that day, recorded April 6th. Hering paid the fee of the examining physician. He presented himself for initiation at the local court April 4, 1910, paid an assessment and certain dues, and was initiated. On or about April 11, 1910, the certificate was received at Detroit, but it was never delivered to Hering or to any person for him and was not demanded by him. On April 8, 1910, Hering broke down—collapsed— while at work, and on April 9th was taken to St. Joseph's Retreat in Dearborn; his ailment being there diagnosed as general paresis. He remained at this hospital until May 7, 1910, when he was removed to Eloise, another sanitarium, where he died November 8, 1910. He was in both institutions treated as a patient suffering from general paresis.

The beneficiary in the certificate brought her suit at law to recover the indemnity therein provided for, whereupon the insurer filed its bill of complaint, charging that the attempt of the deceased to procure the certificate and the contract undertaking therein evidenced was fraudulent, that various untrue repre-

sentations were made by Hering and were evidenced in his application and various warranties made by him were breached, that the certificate was never delivered and could not have been delivered to him while in good health, that when the application was made and accepted and the certificate was issued and forwarded he was ill with the disease from which he later died. The bill prays for an injunction restraining the prosecution of the suit at law and the prosecution of any other suits to recover upon said certificate, that the undelivered certificate be adjudged to be void and to have never been in force, and for general relief. An injunction was granted. Defendant, while concluding her answer with a demurrer clause, pleaded to the merits, there was a replication, a hearing at which testimony was taken in open court, and a decree dissolving the injunction and dismissing the bill. In a written opinion the trial court examined the charges of fraudulent misrepresentations and concluded that fraud had not been established. As to the matter of the nondelivery of the certificate, the opinion is:

"In regard to the other matter, as to the delivery of the policy, it is shown that the insured presented himself upon the 4th day of April for initiation. That at that time he was in good health and was accepted. That at the time in question he paid his initiation fee, or whatever charge was made, and was accepted by the company. That his certificate was made out, and through no fault of his it was not at the meeting that night to be delivered to him. That the other policy to his wife, and to others came the next week and they were received by the other members who were initiated under the same conditions, the evening that the deceased was initiated. The only reason he did not receive his was because of his absence. As stated before, I do not believe that this court would have jurisdiction to pass upon that matter. But, if the court of review determines that that is a matter which can be passed upon by this court, I believe it is my

duty to incorporate my view upon that point here and now for the purposes of the record."

The complainant has appealed, and in its brief presents the contentions:

"I. The fraudulent representations charged in the bill of complaint were established by the proof, and equity has therefore jurisdiction to cancel the certificate.

"II. Equity having taken jurisdiction will retain it to prevent a multiplicity of suits and to determine whether the proposed contract of membership was ever consummated; that is, whether the certificate, not having been delivered to Hering, became effective and created any contract rights.

"III. The certificate was not delivered to Hering while in good health, nor was it ever delivered to him. It was not signed by him nor accepted by him. The certificate, therefore, was never in force."

There was testimony introduced which tended to prove fraudulent representations on the part of the applicant, and in the light of the undisputed oral testimony fraud was conclusively established if the application, signed by the deceased, is treated as his intelligent act. Testimony was introduced tending to prove that the various warranties contained in the written application were not intelligently made, or were not made at all, because the medical examiner did not propound to the applicant various of the questions but himself wrote answers to them and the deceased did not read, although he signed, the application. We are not disposed to review the finding of the trial court upon this subject, being of opinion that the case should have been disposed of in favor of complainant upon the ground that no completed contract of indemnity is made out. We find the allegations of fraud were made in good faith, that the issue upon the question of the delivery of the certificate was tendered in the bill, that the court had jurisdiction of the parties and the subject-matter and should have

retained jurisdiction to grant the relief prayed for upon the ground that the certificate was not delivered to the deceased while he was in good health.

In his application the deceased represented that he was in sound bodily and mental health and agreed for himself and heirs and beneficiaries to waive all claims to benefits until the benefit certificate "issued to me in pursuance of this application shall have been delivered to me while in sound health." In his application he professed to be acquainted with the rules of the association and agreed to be bound by them. One of them reads as follows:

"Sec. 122. No certificate of benefit membership shall be in force until the applicant shall have been initiated or obligated at a meeting of the district court, or obligated under a dispensation granted by the supreme chancellor, under seal of the society, and until he shall have signed and accepted said certificate and made full payment of the assessment and dues as provided in the constitution. And before the recorder shall deliver a benefit certificate the initiate must, in person, while in good health, sign the certificate in his presence."

Whether he did or did not in fact have knowledge of the foregoing rule or law of the association, it cannot be held that the risk was assumed until the law was complied with or compliance therewith was waived. There was no waiver. It does not appear that the certificate was unduly delayed in transmission to the local officers of complainant, or that in the regular course of business it could have been delivered to the deceased while in apparent good health or while he was apparently in as good health as when the medical examination was concluded and his application accepted. When the certificate was delivered to (received by) the local officer of complainant, the deceased was an inmate of the retreat.

We therefore hold that the decree of the circuit court should be reversed, and a decree entered mak-

ing perpetual the injunction heretofore granted. There is no occasion to refer to a court of law the decision of a question which upon the record, upon undisputed testimony, is a question of law. Complainant will recover costs of both courts.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.