Argued February 27; reversed May 20; rehearing denied
June 17, 1941

# MORFORD *v.* CALIFORNIA WESTERN STATES
# LIFE INSURANCE CO.

(113 P. (2d) 629)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND and ROSSMAN, Associate Justices.

*Charles T. Haas*, of Portland (Haas & Schwabe, of Portland, on the brief), for appellant.

*Nicholas Jaureguy*, of Portland (Cake, Jaureguy & Tooze and V. E. Harr, all of Portland, on the brief), for respondent.

KELLY, C. J. The crucial question in this case is whether, under the circumstances, as disclosed by the testimony, a delivery to insured of the policy of insurance may be said to have been made.

The policy was placed in the mail at Sacramento, California, September 27, 1934, postage paid and addressed to the Portland, Oregon, office of defendant

insurance company. Accompanying it was the following letter on the stationery of defendant:

"September 27, 1934

Mr. J. F. Howell:                   Re: Benn M. Morford
                                    Pol. #339352

We enclose herewith policy of above number, which has been issued as follows:

Plan of insurance Ordinary Life (Endowment at 85), with combination accident and Accident Income.

Policy receipts enclosed should be signed before delivery of this policy, one to be inserted in the policy, the other to be returned returned to the Home Office for file.

Very truly yours,
Walter C. Kennedy
WCK:AR                              Chief Underwriter
c. c. Mr. G. E. Drummond
c. c. Miss Hazel Bryson"

Accompanying said policy and letter were duplicate blank receipts in form as follows:

"Policy Receipt

Date . . . . . . .

California-Western States Life Ins. Co.
Sacramento, California.

Gentlemen:                         Re: Policy No. 339352

I acknowledge receipt of the above numbered policy and hereby agree to the changes made by you in Additions or Amendments in my application for said policy, as shown by the photographic copy of the application contained in said policy.

-------------------------------      -------------------------------
          Witness                              Insured."

Mr. J. F. Howell was the local agent of defendant and the person who secured Mr. Morford's application.

At noon on September 28, 1934, the insured Benn M. Morford died without having seen or received the policy in suit.

Plaintiff relies upon the rule that where an application for life insurance has been made and a policy issued in accordance with the terms of such application, there being nothing further to be done than to deliver the policy; under those circumstances, depositing the policy in the mail addressed to the agent of the insurance company with instructions by the company to its agent to deliver it unconditionally to the insured, constitutes a delivery to the insured even though the insured never actually receives it.

Defendant claims that in the case at bar, the policy which was issued did not conform to the terms of the application; that by the terms of the application no change could be made as to amount, classification, plan of insurance, or benefits, unless agreed to in writing by defendant; and that the policy was to have been delivered to the applicant only in the event he signed the receipt agreeing to the changes made.

The application, as executed by Mr. Morford, asked for a $2500 policy known as ordinary life (E 85) with premium waiver, total disability and combination accident. This was applied for in questions 10 and 11.

Such a policy, while effective, in the event of the death of insured, would require the payment to the beneficiary of the principal sum thereof, and in addition thereto, in case of the accidental death of insured, or in case of certain other accidents to insured, would require the payment of certain other amounts. Besides the foregoing, such a policy would provide that, in case of certain total disability therein specified, there would

be a waiver by the insurance company of the payment by insured of additional premiums.

The policy issued by the insurance company was a $2500 ordinary life insurance policy with accident income, for a limited period; but without premium waiver in case of total disability. This policy comprises three separate documents, but, for brevity, we treat it as one policy.

■ If, when the application was made, there was a meeting of the minds upon the essential provisions of the policy actually issued, nothing more would need to be done by the applicant, except to pay the required quarterly premium.

The application contains the following provision, the same being the final provision of paragraph 10 therein:

"Notice—It is agreed that if the company is unwilling to issue a policy on the basis applied for, or at the Company's published premium rate corresponding to the applicant's age, this application shall be for a policy on the plan, with the Additional Benefits and at the premium rates corresponding with the Company's valuation of the risk."

The application also contains the following provision, the same being the final paragraph of the application:

"It is mutually agreed as follows: 1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime and good health, and then only if the applicant has not consulted or been treated by any physician since his medical or non-medical examination; provided, howexer, that if the applicant, at the time of making this application, pays the agent in actual cash the full amount of the first premium for the insurance applied for in Questions 10 and 11, and

so declares in this application and receives from the agent a receipt therefor on the receipt form which is attached hereto, and if the Company, after its usual examination and investigation, shall be satisfied that the applicant was, at the time of completion of this application, insurable and entitled under the Company's rules and standards to the insurance, on the plan and with the Additional Benefits and for the amount applied for in Questions 10 and 11, at the Company's published premium rate corresponding to the applicant's age, then said insurance shall take effect and be in force, under and subject to the provisions of the policy applied for, from and after the date of medical examination, or of the non-medical examination therefor, in accordance with the rules of the Company, whether the policy be delivered to and received by the applicant or not. The date of any policy issued hereon, where the first premium is not paid in full in cash with the application, will be the date of approval of this application at the Home Office of the Company and the first premium will carry the proposed insurance only until the next premium paying date stated in the policy; irrespective of the date of delivery of the policy or of premium payment. 2. That a receipt on the form attached as a coupon this application form is the only receipt the agent is authorized to give for any payment made before the delivery of the policy. 3. That only the President or Secretary of the company can make, modify or discharge contracts, or waive any of the Company's rights or requirements; that notice to or knowledge of the soliciting agent or the Medical Examiner is not notice to or knowledge of the Company, and that neither one of them is authorized to accept risks or to pass upon insurability. 4. That by receiving and accepting said policy, any additions or amendments hereto which the company may make and refer to in the space above entitled 'Additional Amendments' are hereby ratified.''

Construing the provisions of the application, as above quoted, and the provision to the effect, that no

change shall be made as to classification, plan of insurance or benefits, unless agreed to in writing by the applicant, in the light of the fact that no cash was paid by applicant to the company's agent or to the company at the time of making the application, or at any other time, and the further fact that the insured never saw the policy in suit and did not and could not know what change had been made resulting in a different policy than the one sought by the application, we are unable to say that there was a meeting of the minds of the parties upon the basic provisions of the contract of insurance, namely, the benefits to the insured and the payments to be required of him therefor.

■ The introduction of oral statements made by the applicant to the local agent was not justified. Subdivision c, section 101-506 of volume 7, O. C. L. A., requires the insurer to include in its policies a provision that the policy shall constitute the entire contract between the parties. The policy in suit contains such a provision and in the policy a copy of the written application of Mr. Morford is included. There is no ambiguity in the written application. There is no controlling dispute as to the facts. In this state of the record, the written instruments are not subject to oral explanation or variance.

Plaintiff plainly states:

"It is only because the construction of the application as given by the appellant differs so radically from what seems to us to be the plain meaning thereof that we were required to assume for the purposes of the trial that the policy was at least ambiguous and therefore that parol evidence should be received for the purpose of removing the ambiguity or of ascertaining which of two possible conflicting provisions was adopted by the parties."

We think that the mere contentions of a party litigant should not be given the effect of changing the well-known rules of evidence. As stated, the application is not ambiguous. It is merely an application for the character of insurance and the additional benefits mentioned therein. The provisions referring to possible changes in the character of insurance or additional benefits which, if made by the insurance company and assented to in writing by the applicant, become effective, do not render the application ambiguous. For this reason, we will not further discuss the question of the admissibility of parol evidence.

The application called for one character or classification of occupational benefits, namely, class C, while the policy issued covered a different one, namely, class D. There is a difference of a few cents in the premium to be paid under the respective policies, namely, the policy applied for and the policy issued. The policy issued required a lesser premium than the one applied for.

■ The application asked for specific insurance with an alternative statement that, if such specific insurance could not be had, then such insurance as the company was willing to write would be ratified. Until the applicant had notice or knowledge as to the character of the change the company proposed to make and had agreed in writing thereto, the contract of insurance was not complete. In other words, the policy issued was a counter-offer, which required acceptance by the applicant in order to be effective as a contract. *Cranston v. California Ins. Co.*, 94 Or. 369, 185 P. 292.

Plaintiff's reply admits the execution of the written application, a copy of which appears in the policy in suit and said reply also admits that defendant refused

to issue a policy containing "permanent total disability benefits, but in lieu thereof issued another policy with additional benefits corresponding with the company's valuation of the risk."

The language of the provision in the application to the effect, that no change could be made as to amount, classification, plan of insurance or benefits, unless agreed to in writing by the applicant, is as follows:

"No change shall be made as to amount, classification, plan of insurance, or benefits, unless agreed to in writing by me."

This provision follows paragraph fifteen of the application and was made in the application pursuant to an order of the State Insurance Department, being Department Ruling No. 19 of date of November 14, 1928, as follows:

"To all Life Insurance Companies:

It has been ruled by this department that no application for life insurance providing for changes or corrections, in either application or policy issued on such application, to be made by the Home Office shall be approved for use in the state of Oregon unless the application shall also contain a statement that no such changes are effective until approved in writing by the applicant.

The insertion in the acceptance agreement of the phrase '. . . . except that no change shall be made as to amount classification, plan of insurance or benefits, unless agreed to in writing by me' has been approved by this department as being an appropriate means of complying with this ruling. It will therefore be necessary for all companies to immediately issue applications in conformity with the foregoing.

Clare A. Lee

November 14, 1928.          Insurance Commissioner."

■■ Under the terms of the foregoing departmental order, as well as by the rule of construction, which, if possible, will harmonize all the provisions of a written instrument and treat the later clause of a written instrument as controlling upon a prior clause therein on the same subject, it is obvious that the provision required by the order of the insurance department constitutes an exception to the provision that, in case of the insurance company's unwillingness to issue a policy on the basis applied for, the application should be for a policy on a plan, with additional benefits, and at the premium rates corresponding with the company's valuation of the risk.

This construction results in giving the two provisions the meaning which would necessarily follow if the departmental order were strictly observed by using the preposition, except, and adding the requirement of consent by the applicant to the provision that changes could be made. So treated, the provisions under discussion would appear thus:

"It is agreed that if the company is unwilling to issue a policy on the basis applied for, or at the company's published premium rate corresponding to the applicant's age, this application shall be for a policy on the plan, with the Additional Benefits and at the premium rates corresponding with the company's valuation of the risk, except that no change shall be made as to amount, classification, plan of insurance, or benefits, unless agreed to in writing by me."

The final sentence in the body of the application still further modifies these provisions by the statement, "That by receiving and accepting said policy, any additions or amendments hereto which the Company may make and refer to in the space above entitled, 'Additions or Amendments,' are hereby ratified." This

final sentence could not be understood as meaning that the mere mailing by the home office to the company's agent at Portland of a policy containing such additions or amendments by the company, would constitute receipt and acceptance thereof by the applicant and hence, ratification of the changes and amendments.

In the case at bar there was neither assent in writing to the changes nor receipt and acceptance of the policy.

■ Where there is yet something further to be done by the applicant for insurance before he becomes entitled to receive the policy, the mere mailing of the policy by the general office to its local agent, with instructions to require the applicant to take the course required of him before making delivery of the policy, does not constitute constructive delivery of the policy.

To the point that the mailing of a life insurance policy by a company to its agent for delivery to the insured is a sufficient delivery to place the policy in effect, plaintiff cites *Francis v. Mutual Life Insurance Co.*, 55 Or. 280, 289-91, 106 P. 323.

In that case, it was held that there was not a particle of evidence that the policy was not forwarded for the purpose of delivery; but to be held by the Seattle office pending investigation into the habits of deceased in regard to the use of intoxicants. In the instant case, it is not disputed that the policy was accompanied by the letter herein quoted requiring written assent to the changes made before delivery thereof.

*Lathrop v. Modern Woodmen*, 63 Or. 193, 126 P. 1002, L. R. A. 1918E, 333, is also cited to this point by plaintiff. In that case, it was held that plaintiff's decedent was entitled to the unconditional delivery of his policy at the date it was received. In the case at

bar, the defendant had a right to require an assent in writing to the changes before making delivery. To this point, plaintiff also cites 53 A. L. R. 492. There, we find an annotation replete with citations upon the question here presented. The case of *Amarillo National L. Ins. Co. v. Brown*, (Tex. Civ. App.) 166 S. W. 658, in our opinion, comes nearer supporting plaintiff's contention herein than any other case there cited.

In that case, a policy was issued upon a ten-year endowment plan, while the application was for such a policy on a fifteen-year endowment plan. The policy issued was forwarded by the insurance company to its soliciting agent for delivery. The agent informed the applicant by telephone of the receipt by him of the policy and of the change from a fifteen-year endowment to a ten-year endowment and the applicant said: "That is all right; keep it for me until I come down." In regard to paying the additional premium, he said: "I will make that all right with you when I come down." On rehearing, in commenting upon that phase of the case, the Court of Civil Appeals of Texas, speaking through Mr. Justice Hendricks, say:

"When Nelson" [the subordinate agent of the company] explained this difference, without any statement with reference to any new application to be signed, with the only change as indicated, and Brown" [the applicant] "accepted the policy as changed, we think the minds of the parties met, and the policy and the old application constituted the contract."

No such circumstance is shown in the case at bar.

The following cases cited in 53 A. L. R. 492, 515, recognize the rule that where the existence of a condition is rightfully required by the insurance company to be shown by the applicant before actual delivery of

the policy may be made by the agent of the company to whom the policy is addressed and mailed, the mailing of the policy to such agent does not constitute delivery thereof. *Missouri State Life Ins. Co. v. Burton,* 129 Ark. 137, 195 S. W. 371; *Weber v. Prudential Ins. Co.,* 208 Ill. App. 117, Affirmed in 294 Ill. 326, 120 N. E. 291; *Court of Honor v. Hering,* 178 Mich. 377, 144 N. W. 843; *Noyes v. Phoenix Mutual Life Ins. Co.,* 1 Mo. App. 584; *Denton v. Kansas City Life Ins. Co.* (Tex. Civ. App.) 231 S. W. 436.

Vol. 1, Cooley's Briefs on Insurance 640, cited by plaintiff, states the rule:

"It may, however, be regarded as settled that the receipt by an agent from his company of a policy, to be unconditionally delivered by him to the applicant, is tantamount to a delivery to the insured, though the agent never parts with possession of the policy, and its delivery to the applicant is by contract made essential to its validity."

On page 644, ibid, it is said:

"Where a policy is deposited in the mail directed to the agent, with the intention of having it delivered by the agent to the insured unconditionally, the policy is deemed to have been delivered at the time it was placed in the mail."

On the same page, however, it is stated that—

"This rule does not apply, if the policy is mailed to the agent for the performance of some specific duty in making delivery." Citing *New York Life Ins. Co. v. Mason,* 151 Ark. 135, 235 S. W. 422, 19 A. L. R. 618.

"And an application for life insurance, although accompanied by the certificate of examination by an insurance company's local physician, does not constitute a contract of insurance until accepted and the conditions of the application are met." 1 Couch, Cyc. of

Insurance law 151; section 85, citing *Tainter v. Central States Life Ins. Co.* (Mo. App.) 185 S. W. 1185.

■ In fact, to establish an insurance contract without more than the original offer and acceptance, the acceptance must be of the terms offered, else there is no meeting of the minds. Section 89, ibid, p. 158, citing *Busher v. New York Life Ins. Co.*, 72 N. H. 551, 58 Atl. 41; *Fidelity & Cas. Co. v. Curtis Brown Co.*, 105 Okla. 136, 232 P. 99; *Hartford S. B. I. & Ins. Co. v. Lasher Stocking Co.*, 66 Vt. 439, 44 Am. St. 859, 29 Atl. 629. Especially where the application expressly provides the basis on which the insurance is to be effected. Ibid, section 89, citing *German-American Ins. Co. v. Darrin*, 80 Kan. 578, 103 P. 87.

■ And, as a general rule, if the insurer replies to the application by proposing different terms, or by sending a policy differing in essential terms from that applied for, no contract is made until the counter proposition or policy has been accepted by the applicant, even though the insurer retains the premium pending action by the insured. In such a case, there is no contract as the minds of the parties never met upon the terms. Ibid, section 89, citing *MacKelvie v. Mutual Ben. L. Ins. Co.*, 287 Fed. 660, 262 U. S. 747, 67 L. Ed. 1212, 43 Sup. Ct. 522; *Western Indemnity Co. v. Industrial Acc. Com.*, 182 Cal. 709, 190 P. 27; *Michigan Pipe Co. v. Michigan F. & M. Ins. Co.*, 92 Mich. 482, 20 L. R. A. 277, 52 N. W. 1070; *State ex rel. Equitable L. Assur. Soc. v. Robertson*, (Mo.) 191 S. W. 989; *Salisbury v. Indiana & O. L. S. Ins. Co.*, (Mo. App.) 202 S. W. 412; *Fidelity & Cas. Co. v. Curtis-Brown Co.*, supra; *Riordan v. Equitable L. Assur. Soc.*, 31 Idaho 657, 175 P. 586.

■ And prepayment of premium alone will not effect a contract when the insurer has submitted a counter

proposition which has not been accepted by the applicant. *Cranston v. California Indemnity Co.*, supra; *Piedmont & A. L. Ins. Co. v. Ewing*, 92 U. S. 377, 23 L. Ed. 610; *Hamblet v. City Ins. Co.*, (D. C.) 36 Fed. 118; *Ocean Ins. Co. v. Carrington*, 3 Conn. 357; See *Nordness v. Mutual C. G. F. Ins. Co.*, 22 S. D. 1, 114 N. W. 1092; *Costello v. Grant Co. M. F. & L. Ins. Co.*, 133 Wis. 361, 113 N. W. 639.

Ordinarily, where the contract is different from that applied for, as has already been pointed out, delivery is not automatic upon sending it to the agent. Vol. 1, Appleman Insurance Law and Practice, 145, sec. 142, note 1, citing *State ex rel. Equitable Life Assur. Soc. of U. S. v. Robertson*, (Mo. Sup.) 1917, 191 S. W. 989.

■ The delivery of the contract to the agent is not of itself sufficient to make him an agent of the insured, where some condition precedent must first be fulfilled. Ibid, p. 142, sec. 141, note 83, citing *McKenzie v. Northwestern Mut. Life Ins. Co.*, 26 Ga. App. 225, 105 S. E. 720; *Smith v. Commonwealth Life Ins. Co.*, 157 Ky. 146, 162 S. W. 779.

The case of *Wood v. Kansas City Life Ins. Co.*, 228 Mo. App. 979, 75 S. W. (2d) 412, cited by plaintiff, to the point that when an applicant for insurance advises the soliciting agent that he is willing to accept a life insurance policy either with or without certain specified additional benefits, the issuance of a policy either with or without such additional benefts creates a binding insurance contract, is readily distinguishable from the case at bar.

An offer to accept a stated kind of insurance or as an alternative a different but particularly specified plan, classification or benefit, differs from an applica-

tion for a specifically described policy, but containing the statement that if this kind of a policy is not approved, applicant will accept any kind of policy that the company chooses to issue. In the former, there is such a degree of certainty that if the alternative is acted upon, it may be said that there was a meeting of the minds of the parties, while it is very obvious in the latter case there could be no meeting of the minds until the choice of the insurer was made and that choice communicated to, and approved by, the applicant.

In the case at bar, according to the terms of the application required by the insurance department when a change is made resulting in the issuance of a policy differing from the one specified in the application, there must be an agreement in writing by the applicant or delivery to and acceptance of the policy by the applicant under such circumstances as to constitute a waiver of the applicant's right to object to the character of policy issued.

*Metropolitan Life Ins. Co. v. Banion*, 106 Fed. 561, cited by plaintiff, holds that an insurance company may make a binding contract of insurance by issuing and delivering the policy and accepting the premium upon it even though the insured applied for a different kind of policy. In that case, it was shown that the policy was mailed to the insured. There is no suggestion in that case that a policy would become effective by reason of its being mailed by the home office to a local agent with instructions to procure a written agreement from the applicant approving the changes made in the application and the issuance of a different policy than the one applied for, before delivering the policy to the applicant, where the rules of the State Insurance Department requires that a provision be made in the applica-

tion that such changes must be agreed to in writing by the applicant.

At the time Mr. Morford executed the application, he executed a note, wherein the local agent was named as payee, in the sum of $23.37. This note was sent to the general office of defendant at Sacramento, California, by the local agent at Portland. An alteration appears on the face of this note, in that the amount of the principal sum was changed from $23.37 to $22.91. The local agent testified in effect that this change was made after the note left his possession. We quote his testimony.

"Q. I will hand you Plaintiff's exhibit 1 for identification and ask you what that is.

A. That is the note which Benn Morford gave me with the application.

Q. Is that his signature?

A. That is.

Q. I notice that the amount has been changed. It was originally $23.27 and it was changed to $22.91.

Q. Was that change made before you got it from him?

A. It was not.

Q. And here also in the body of the note, $22.91. Who made that change?

A. I don't know."

The chief underwriter of defendant testified in effect that this alteration appeared in the note when it was received by defendant at its general office. We quote from his testimony:

"Q. (By Mr. Haas.) I will ask you who made those changes on that note, if anyone, from $23.29 to $22.91?

A. At the time we received the application this note was attached to it and had already been made out for that amount of $22.91."

At most, this note could be considered only as evidence of the amount of the first quarterly premium upon the policy applied for. It could not be payment of a quarterly premium, the amount of which was unknown to the maker when he executed it. The chief underwriter of defendant testified that notes were not accepted by defendant in payment of premiums. The rules of the defendant, with which the local agent above mentioned was familiar, are to the same effect.

■ We are unable to agree with counsel for plaintiff that by registering the note, according to its manner of dealing with its local agents and thereafter returning it to the beneficiary cancelled, the defendant treated and accepted the same as a cash payment; nor do we construe the record concerning the note given by Mr. Morford as plaintiff's counsel construe it. We think reference thereto in the correspondence between defendant and its Portland agent merely indicated alternative courses, one of which might be contemplated by the agent. Both of these courses, in our opinion, would have been prevented because of the material alteration of the note as stated.

To the point that payment of a premium on an insurance policy may be made by an ordinary note, if it is at the time so agreed and understood, plaintiff cites the opinion of Mr. Justice Lusk in the instant case upon an appeal from a judgment upon the pleadings. 161 Or. 113, 88 P. (2d) 303. It is also stated in that opinion, "that the acceptance of a note is not to be considered as taken in discharge or payment of the debt unless it is at the time so agreed and understood."

After the change was made in the character of insurance, the applicant was never apprised of the amount of the premium which would become due upon

the policy which was issued. No note was tendered in that sum. As stated, the note taken by the local agent was materially altered so that its negotiability was destroyed. Neither the payee named in the note nor the insurance company could explain the alteration sufficiently to warrant its introduction in evidence in an action to enforce it.

The record is barren of any evidence to the effect that the insurance company agreed to accept the note received by the local agent from Mr. Morford, when the application for insurance was made, as payment of the first quarterly premium upon the policy which was issued.

In *Riner v. Southwestern Surety Ins. Co.*, 85 Or. 293, 165 P. 684, 166 P. 952, also cited by plaintiff, it was held that the note in suit was given and accepted in payment for a judgment.

In *Narver v. California State Life Insurance Company*, 211 Cal. 176, 294 P. 393, 71 A. L. R. 1374, also cited by plaintiff, the court say: ''His note was given and accepted as payment of the premium, and was therefore a payment of it.''

It may be observed that payment of the premium would not deprive the insurance company of the right to require assent in writing of the applicant to the changes mentioned before delivery of the policy.

The case of *Unterharnscheidt v. Missouri State Life Ins. Co.*, 160 Iowa 223, 138 N. W. 459, 464, 45 L. R. A. (N. S.) 743, is cited by plaintiff to the point that the mailing of the policy to the agent for delivery to the insured is in legal contemplation, delivery to the insured under the provision of the application that the policy shall not be effective until it is delivered to and received by the applicant.

In that case it was held that, under the record, payment of the premium could be found to have been made and nothing remained but delivery of the policy, hence, mailing it to the local agent to be delivered to the insured constituted constructive delivery. That case does not support the contention in a case such as the instant case, where the application expressly declares that any changes must be agreed to in writing by applicant, that mailing a policy containing such changes to the local agent with instructions to secure such written agreement, constitutes constructive delivery of the policy.

*New York Life Insurance Co. v. McJunkin*, 227 Ala. 228, 149 So. 663, involves the principle of waiver. We quote:

"The stipulation for the receipt to be given the applicant was for the benefit of the applicant and may be waived. American Ins. Co. v. Few, supra. The acceptance and retention of the premium note and sending it to the general agent, as and for the time indicated in the evidence, amounted to payment to the agent in cash of the full amount of the first premium for the insurance applied for, or the waiver thereof by the general agent."

▆▆▆ In the case at bar, there is nothing to indicate waiver on the part of the applicant. Waiver is the relinquishment of a known right. The applicant could not possibly have known what right he was relinquishing by the changes which were made until he was apprised of the character of the changes made.

*Jackson v. New York Life Ins. Co.*, 7 Fed. (2d) 31, cited by plaintiff, recognizes and quotes from 32 C. J. 1127, the rule that—

"A policy of insurance is delivered to insured when it is deposited in the mails, duly directed to insured at

his proper address and with postage prepaid, even though in fact he never receives it. Likewise the policy is constructively delivered when it is mailed to an agent unconditionally and for the sole purpose of delivery to insured, even though the agent does not actually deliver the policy to the insured. But the rule is otherwise when the policy is mailed to the agent for delivery only on the performance of certain conditions.''

In the case at bar, the policy was not unconditionally mailed to the agent.

In *Kilborne v. Prudential Ins. Co.*, 99 Minn. 176, 108 N. W. 861, 862, also cited by plaintiff, it is held that in the absence of notice of the applicant of the lack of the soliciting agent's authority to accept a note in payment of the first premium on a policy, the acceptance of a note by the agent is binding upon the company. On December 23, 1904, a policy was issued in accordance with the application. On December 24, 1904, the insured was killed. No changes were made rendering the policy at variance with the policy for which the application was made.

*Kansas City Life Insurance Company v. White*, 33 Ariz. 303, 264 P. 474, also cited by plaintiff, is a case where the policy was issued in accordance with the application, a note was given to the soliciting agents for the amount of the premium and the agents agreed to send the cash to the insurance company. The insurance company charged the agents on its books with the first year's premium less their commission and transmitted them a debit slip in that respect following the usual custom. Under that state of the facts, it was held that the payment of the premium should be deemed to have been made in cash. This case is not in point here.

*Coci v. New York Life Ins. Co.*, 155 La. 1060, 99 So. 871, also cited by plaintiff, differs in its functional situation from the case at bar. In that case, the policy was issued in accordance with the terms of the application, the money covering the first premium less the agent's commission was paid to the insurance company by the agent, who took the applicant's note therefor. Obviously, an agreement in writing by the applicant consenting to changes in the contract sought by the application had no basis for consideration. There was no suggestion that the note given by the applicant had been materially altered. We are not called upon here to decide whether constructive delivery should be held to have been made when the policy was mailed to the insurance agent for delivery even though when manual or actual delivery occurred, the applicant was suffering from illness which shortly thereafter caused his death. In the case at bar, no manual or actual delivery to Mr. Morford was made. We are justified in saying, however, that the holding of the Louisiana court is not in accord with the weight of authority. We mention that fact because it is so stated in the opinion of the supreme court in the Louisiana case under discussion. We quote therefrom:

"In reaching this conclusion we are aware that jurisprudence generally is not in harmony with this holding. There are many jurisdictions that hold a contrary view."

*New York Life Ins. Co. v. Pike*, 51 Colo. 238, 117 P. 899, cited by plaintiff, also differs in its factual situation from the instant case. There, it was held to be the custom of the insurer to accept notes as payment of premiums and charge the agent therewith. The policy was issued according to this custom and sent to its

Denver office without instructions. In the case at bar, no such custom was shown and when the policy was mailed to its Portland office, definite instructions accompanied it requiring a written agreement from the applicant assenting to the changes made.

The case of *Fidelity Mutual Life Association v. Harris*, 94 Tex. 25, 57 S. W. 635, 86 Am. St. Rep. 813, also differs from the instant case in that there, when the policy was issued, nothing remained to be done by the applicant to entitle him to delivery thereof. The premium had been paid, the policy contained no provision that any agreement in writing should be made by applicant. It does not appear that any other or different policy than the one applied for was issued. We are impressed, however, with the holding therein to the effect that oral statements to the soliciting agent have no effect upon the written application.

In *Fried v. Royal Insurance Co.*, 50 N. Y. 243, the contract of insurance was made by the beneficiary with the agent of defendant. The defendant was a foreign company with offices in London. The policy was issued by defendant and sent to the agent of defendant, who refused to deliver it. There was no condition to be performed, such as the requirement of a written agreement from the insured, as in the case at bar.

*Mutual Life Insurance Co. v. Frey*, 71 F. (2d) 259, holds, as to condition upon which delivery depends, that where neither policies nor application therefor made execution of written acceptance of policies by insured a condition to their becoming effective, beneficiaries and insured, who did not know that agent's authority to deliver policies was limited upon insured's written acceptance thereof, were not bound by that limitation in the agent's authority.

In the case at bar, as stated, the application stated that written assent of applicant was required in case of changes in the character of insurance issued resulting in a different policy than the one applied for.

Likewise in *New York Life Ins. Co. v. Rutherford*, 284 Fed. 707, no conditions or terms, unfulfilled by insured, appeared either in the application or policy. In the case at bar, payment of the premium and agreement by applicant in writing assenting to the changes were lacking.

The same is the doctrine of *Pacific Mutual Life Ins. Co. of California v. Barton*, 50 F. (2d) 362. Conditions not mentioned in application form or by agent would not justify nondelivery of policy. In the instant case, both payment of premium and the making of a writing by insured agreeing to said changes are set forth in the application.

The same principle is announced in *New York Life Ins. Co. v. Baker*, 33 F. (2d) 434. It is expressed in the syllabus thus:

"Applicant is not bound by insurance company's instructions to agent relative to delivery of policy, where instructions raised conditions not entering into application."

If sympathy for plaintiff, because of the lamentable and untimely death of her husband could control this decision, the judgment of the circuit court would not be disturbed; but we cannot permit such consideration to affect our declaration of the law.

For the reasons hereinbefore stated, the judgment of the circuit court is reversed and the cause is remanded with instructions to enter an order of dismissal.

Mr. Justice BELT did not participate in this opinion.