Janet K. SIMMONS
and Dale D. Simmons,
*Respondents,*

*v.*

ALL AMERICAN LIFE
INSURANCE COMPANY,
a New Jersey Insurance Company,
*Appellant.*

(CV 90-0780; CA A71183)

838 P2d 1088

Mike Ellickson, Eugene, argued the cause for appellant. With him on the briefs was Jaqua & Wheatley, P.C., Eugene.

Peter L. Barnhisel, Corvallis, argued the cause for respondents. With him on the brief was Fenner, Barnhisel, Willis & Barlow, Corvallis.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Riggs, J., dissenting.

## EDMONDS, J.

Defendant appeals a judgment for plaintiffs on their claim for life insurance benefits. We reverse.

In 1985, defendant issued a $5,000 nine-month group term life insurance policy, which was administered by American Insurance Administrators (AIA). The University of Utah Alumni Association (Association) purchased the policies as gifts for graduates who chose to enroll. The premiums were paid by Association. In May, 1989, plaintiffs' son (decedent) enrolled in the program by returning a certificate sent to him by Association. In October, 1989, Association acknowledged decedent's enrollment and informed him that he was eligible for $25,000 in group term life insurance. The letter said that "[a]ll you will have to do is verify your beneficiary and pay the premium."

On March 5, 1990, Association mailed decedent a letter, a brochure, a certificate of insurance for a $25,000 group term life insurance policy and a continuation form for a "Graduate Gift Term Life Insurance Plan - Phase 2." Those documents were received at decedent's address on March 8, 1990. Decedent was injured on March 7, 1990, and he did not regain consciousness before he died on April 3, 1990. On April 13, 1990, plaintiffs' attorney wrote to AIA, tendered a check for $26.75, enclosed a continuation form signed by plaintiffs' attorney "for [decedent]," and asked for the necessary forms to claim the $25,000 policy proceeds. Defendant refused the tender of the check and denied the claim. Plaintiffs filed this action and were awarded $25,000 in benefits.

■ Defendant first assigns as error the denial of its motion for summary judgment. Because defendant's motion involves matters of proof, the denial of the motion is not reviewable. *Payless Drug Stores v. Brown*, 300 Or 243, 708 P2d 1143 (1985); *Heidtke v. Int'l Brotherhood of Boilermakers*, 104 Or App 473, 801 P2d 899 (1990).

■ Defendant next assigns error to the court's denial of its motion for a directed verdict. ORCP 60. A directed verdict is proper only if reasonable people could draw but one conclusion from the evidence. *James v. Carnation Co.*, 278 Or 65, 69, 562 P2d 1192 (1977). We review the evidence in the light

most favorable to the nonmoving party. *City of Rogue River v. DeBoer*, 288 Or 485, 488, 605 P2d 697 (1980).

Defendant argues that decedent did not accept its offer to insure his life for $25,000 before he died. Plaintiffs contend that a binding contract for the $25,000 policy occurred when decedent accepted Association's offer by enrolling in the program in May, 1989.[1]

An offer must be certain so that, when an unqualified acceptance occurs, there will be a meeting of the minds as to the obligations that each assumes under the contract. *Klimek v. Persich*, 231 Or 71, 79, 371 P2d 956 (1962). In order to have a valid contract of insurance, the amount of the premium

---

[1] The certificate of insurance that decedent received in May, 1989, with the original offer, included this reference to future insurability:

**"VII. Guaranteed Future Insurability Privilege**

"(A) When the insurance under this Certificate terminates according to Provision VI(a) or VI(b), TERMINATION OF INDIVIDUAL INSURANCE, the Insured shall be entitled to have issued to him/her by the Company, without evidence of insurability, a policy or certificate of term life insurance through the Alumni & Fraternal Benefits Trust in the amount described below, provided the first premium is paid to the Company. Guaranteed coverage amounts are:

Under age 40—up to $25,000
Ages 40-59—up to $10,000"

The other side of the certificate said, in part:

"At the end of the 9-month life insurance period, participating new graduates have the *guaranteed* option to continue to be insured for the face amounts of life insurance listed below, *without* taking a medical examination or answering any health questions.

"The amount of group term life insurance guaranteed to you following the 9 months of new graduate gift insurance is determined by your age, according to the table below:

| Your Age (9 Months After Graduation) | Amount of Life Insurance Guaranteed* to You |
| --- | --- |
| Under 40 | $25,000 |
| 40-59 | $10,000 |

*No health questions

"Guaranteed future insurability is a benefit for all of our new graduates (under age 60) who accept this $5,000 gift insurance policy. *Information about the rates and how to continue your Alumni Life insurance after the 9 free months will be sent to you in the mail at the beginning of the ninth month.* No insurance company representative will attempt to call on you. It's all accomplished conveniently by mail." (Some emphasis in original; some emphasis supplied.)

must be agreed on, expressly or impliedly. 1 *Couch on Insurance 2d* §§ 2.5 and 2.6 (1984); *see also Morford v. Calif. West. States Life Co.*, 166 Or 575, 583, 113 P2d 629 (1941). None of the documents decedent received from Association in May, 1989, included information about the amount of the premium that he would be required to pay for the $25,000 policy. The first reference to the premium was in Association's October, 1989, letter that was mailed to decedent after he had purportedly accepted the offer. The amount of the premium was an essential term in the agreement to insure decedent's life for $25,000. Until decedent was aware of the amount and had agreed to pay it, he could not have entered into an enforceable agreement to purchase the $25,000 insurance policy. When he sent in the certificate for the $5,000 coverage in May, 1989, he did not have that information. Accordingly, the correspondence could not constitute an offer, because it was too indefinite.

The dissent argues that we decide an issue not raised by the parties. To the contrary, defendant moved for a directed verdict on the basis that "as a matter of law we have two separate proposed — two separate insurance policies here, insurance contract * * * and if that's true, have two separate policies, then I think it's clear that we have a failure of a condition precedent to the formation of any contract after March 15 because the premium was not paid during the lifetime." A condition precedent to an enforceable life insurance agreement necessarily includes knowledge of what the premium is so that it can be paid in exchange for the policy benefits.

The trial court erred in denying defendant's motion for a directed verdict.

Reversed and remanded with instructions to enter judgment for defendant.

**RIGGS, J.,** dissenting.

The majority either misunderstands, mischaracterizes or chooses to ignore the issues actually raised by the parties. Moreover, the majority gratuitously decides this case solely on an issue of contract formation that is raised for the first time in the majority opinion.

Defendant made three assignments of error.[1] Contrary to the majority, defendant never contended on appeal that there had been no offer. In fact, defendant's brief, assignments of error and oral argument all but concede that a valid offer was made. Also, contrary to the majority's characterization of the issues, defendant never contended that the contract of insurance failed because there was no "meeting of the minds" or because the offer was "too indefinite."[2] We should not create, and then base our decisions on, arguments that are not raised on appeal.

I dissent.

---

[1] Defendant's brief lists the following "Questions Presented" as a summary of the assignments of error on appeal:

"1. Whether a $25,000 group term life insurance policy may be held an extension of a free $5,000 group term life insurance policy which had automatically terminated, where the two policies had separate certificates of insurance and different terms and conditions, and where the two policies related to the same master group policy?

"2. Where an insurer offers to allow a nine-month $5,000 group term life insurance policy by issuing a $25,000 group term life insurance policy under different terms and conditions, is an acceptance required to effect the $25,000 coverage?

"3. May a grace period apply to extend coverage past the automatic termination date of a nine-month $5,000 group term life insurance policy to create $25,000 coverage under a new certificate of insurance with new terms and conditions, where the insured never accepted the insurer's offer to provide $25,000 coverage?"

[2] The majority states that defendant argued that there was no offer or that the offer was too indefinite when it told the trial court that

"as a matter of law we have two separate proposed—two separate insurance policies here, insurance contract * * * and if that's true, have two separate policies, then I think it's clear that we have a *failure of a condition precedent* to the formation of any contract after March 15 because the premium was not paid during the lifetime." 115 Or App at 413. (Emphasis supplied.)

Only by the greatest stretch of judicial imagination could that be interpreted as raising or preserving any question concerning the definiteness of the offer.